**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUSTYNA ZUBKO-VALVA, as Mother and Natural Guardian of ANTHONY VALVA and ANDREW VALVA, and as Administratrix of the Estate of THOMAS VALVA, and JUSTYNA ZUBKO-VALVA individually, | Case No. 20-Civ-2663(JMA)(ARL) |
| *Plaintiff*, | |
| v. | |
| THE COUNTY OF SUFFOLK, *et. al.*, | |
| *Defendants*. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS LEGAL AID
SOCIETY OF SUFFOLK COUNTY, INC., AND ETHAN HALPERN
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Jon L. Norinsberg, Esq.
John J. Meehan, Esq.
**JON L. NORINSBERG, ESQ., PLLC**
110 East 59th Street, Suite 3200
New York, New York 10022
T: (212) 791-5396
F: (212) 406-6890

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………….…1
STATEMENT OF FACTS………………………………………………………………….…..1
STANDARD OF REVIEW …………..……………………………………………..………...2
ARGUMENT……………………………………………………………………………......3

    I.      PLAINTIFF'S FEDERAL CLAIMS……………………………………………….3

        A.  The Complaint Has Pled Sufficient Facts for Defendant Halpern to Be Held Liable
           Under § 1983…………..……..…………..…..………………..……………….…..3
        B.  Plaintiff Has Stated a Malicious Prosecution Claim………….. ……….. ……….. …..5
        C.  Plaintiff Has Stated a Claim for Abuse of Process …………….. ……….. ……….. ……5
        D.  Plaintiff Has Pled a Stigma-Plus Claim……………..…………..……..………..……..8

    II.     PLAINTIFF'S STATE CLAIMS………………………………………………...9

        A.  Plaintiff Has State a Claim for Wrongful Death……….. ……….. ……….. ……..9
        B.  Plaintiff Has Stated a Claim for Legal Malpractice……….. ……….. ……... …10
        C.  Plaintiff Has Pled a Claim under N.Y. Social Services Law § 413………………..11

CONCLUSION……..……….. …………………………………………………………….12

# TABLE OF AUTHORITIES

**Page(s)**

*Adickes v. S.h. Kress & Co.*,
    398 U.S. 144 (1970) ............................................................................ 4,5

*Anilao v. Spota*,
    340 F. Supp. 3d 224 (E.D.N.Y. 2018) ................................................ 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 4

*Ashley v. Civil*,
    No. 14 Civ. 5559, 2019 U.S. Dist. LEXIS 56006, 2019 WL 1441124 ......... 8

*Betts v. Shearman*,
    751 F3d 78 (2d Cir 2014) .................................................................... 5

*Burt v. Maasberg*,
    Civil Action No. ELH-12-0464, 2014 U.S. Dist. LEXIS 41982 (D. Md. Mar. 28, 2014)
7

*Cannistra v. O'Connor, McGuinness, Conte, Doyle, Oleson & Collins*,
    286 A.D.3d 314 (2d Dep't 2011) ........................................................ 11

*Cook v. Sheldon*,
    41 F.3d 73 (2d Cir. 1994) .................................................................... 6

*Dahlberg v. Becker*,
    748 F.2d 85 (2d Cir 1984) .................................................................... 4

*Duck v. Jacobs*,
    739 F. Supp. 1545 (S.D. Ga. 1990) .................................................... 9,10

*E.E.O.C. v. Port Auth. of N.Y. & N.J.*,
    768 F.3d 247 (2d Cir. 2014) ................................................................ 4

*Eun Bin Lim v. Parent*,
    176 F. Supp. 2d 207 (E.D.N.Y. 2001) ................................................ 10

*Felske v. Bernstein*,
    173 A.D.2d 677, 570 N.Y.S.2d 331 (App. Div. 2nd Dept. 1991) ................. 7

*Grant v. Cafferri*,
    No. 19-CV-2148 (RRM) (LB), 2019 U.S. Dist. LEXIS 209237 (E.D.N.Y. Dec. 2, 2019)
5

*Green v. Mattingly*,
    585 F.3d 97 (2d Cir. 2009), for the proposition that abuse of process will not lie for civil
actions. But Green was merely ................................................................ 8

*Hoffman v. Town of Southampton*,
    893 F. Supp. 2d 438 (E.D.N.Y. 2012) ................................................ 7

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015) ................................................................ 4

*Marrero v. Hialeah*,
    625 F.2d 499 . (5th Cir. 1980) ............................................................ 10

*Masvidal v. United States DOJ*,
    716 F. Supp. 2d 1207 (S.D. Fla. 2010) .............................................. 10

*Matter of Jennifer VV. v. Lawrence WW.*,
    122 N.Y.S.3d 707 (App. Div. 3rd Dept. 2020) .................................. 11

*Murphy v. Lynn*,
  118 F.3d 938 (2d Cir. 1997) ........................................................................................ 6,8
*Rosen ex rel. Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.*,
  113 F. Supp. 2d 615 (S.D.N.Y. 2000) ......................................................................... 7
*Stagl v. Delta Airlines*,
  Inc., 52 F.3d 463 (2d Cir. 1995) ................................................................................ 10
*Santosky v. Kramer*,
  455 U.S. 745 (1982) ..................................................................................................... 8
*Valmonte v. Bane*,
  18 F.3d 992 (2d Cir. 1994) .......................................................................................... 9
*Warner v. Orange Cnty. Dep't of Prob.*,
  115 F.3d 1068 (2d Cir. 1996) ..................................................................................... 8
*Weintraub v. Board of Educ. of City of New York*,
  423 F. Supp. 2d 38 (E.D.N.Y 2006) .......................................................................... 5
*Young v. Suffolk Cty.*,
  705 F. Supp. 2d 183 (E.D.N.Y. 2010) ........................................................................ 5

**United States Code**
42 U.S.C § 1983 ………………………………………………………………… *passim*

**State Statutes**
N.Y. Soc. Serv. Law § 413 ............................................................................................ 12

[This page left intentionally blank]

## PRELIMINARY STATEMENT

Plaintiff Justyna Zubko-Valva ("Plaintiff") hereby submits this Opposition to the Motion to Dismiss filed by Defendants Legal Aid Society of Suffolk County, Inc., and Ethan Halpern ("Defendant Halpern") (collectively "Defendants").

This case arises out of the starvation, torture, and death of an 8-year-old boy, Thomas Valva ("Tommy"), at the hands of his father Michael Valva ("Valva"). As the court-appointed Attorney for Children ("AFC") for Tommy and his siblings, Defendant Halpern had an obligation to ensure that the children were not placed in the custody of an abusive parent. Halpern knew that Valva was abusing and starving the children, and he knew that Plaintiff was a good mother to them. Yet, he concealed the evidence of Valva's abuse from the court and fabricated evidence that Plaintiff was beating the children. As a direct result of these misrepresentations and omissions, the baseless neglect proceedings that Child Protective Services ("CPS") initiated against Plaintiff dragged on for months, during which time her name was dragged through the proverbial mud.

Defendant's defamatory statements about Plaintiff made it virtually impossible for her to regain custody over her children. The consequences of these actions were entirely foreseeable: in January 2020, Tommy was found frozen to death in Valva's garage. This action seeks to hold Defendant Halpern responsible for her role in that death.

## STATEMENT OF FACTS[1]

On January 17, 2018, the same day that CPS filed its Neglect Pre-Petition against Plaintiff, Defendant Halpern was appointed AFC January 2018 by Justice Cheng. Compl. ¶ 188. Defendant

---

[1] Plaintiff has provided a fuller summary of the facts in her oppositions to the Motions to Dismiss filed by the CPS Defendants, the School Defendants, McCabe, and Curti. Rather than rehash those facts here, Plaintiff will confine herself to the specific facts pertaining to Defendant Halpern.

Halpern was aware that Valva had viciously beaten Tommy four days earlier. *Id.* ¶ 193. Moreover, upon his appointment, Plaintiff provided Halpern with conclusive and indisputable evidence showing that Valva had been abusing the children. *Id.*

As an AFC, Defendant Halpern was duty-bound to follow up on that evidence. Instead, he did the exact opposite: despite mounting evidence that Valva was beating, starving, and brainwashing the children, Defendant Halpern did not meet – *even once* -- with the children. *Id.* ¶ 188. On February 20, 2018, he submitted an Affirmation in support of CPS's Opposition to Plaintiff's Motion to Dismiss the Neglect Petition. In that Affirmation, he stated under oath, falsely, that Plaintiff had *admitted* to "hitting the children." Defendant Halpern knew this was a bald-faced lie. *Id.* ¶ 190.

Halpern further misled the Court by stating, under oath, that Plaintiff's "own testimony" had "established elements of a neglect finding." This was another blatant fabrication. In fact, Plaintiff *never once* testified to any act or omission on her part that would even remotely constitute "neglect" or "abuse" of her children. *Id.* ¶ 192. Defendant Halpern's affirmation would play a decisive role in Justice Cheng's decision to deny Plaintiff's Motion to Dismiss, as a result of which the Neglect proceedings would drag on for months. *Id.* ¶ 191.

Apart from Halpern's false statements, Halpern deliberately concealed from the Court evidence of Valva's abuse. *Id.* ¶ 186. Specifically, Halpern knew, in his role as AFC, that Valva had severely beaten up and assaulted Tommy on January 13, 2018 -- causing visible physical injuries to his buttocks and lower spine -- and that Plaintiff could not have possibly had anything to do with this assault, since the children were in Valva's custody at the time the beating occurred. But Halpern, in a shocking display of indifference to the children, chose to conceal the evidence of Valva's abuse from the court. *Id.* ¶¶ 186, 193-195.

Despite being duty bound to inform the authorities, Defendant Halpern never took or recommended action against Valva – he did not ask the court for a Full Stay Away Order or for an order imposing even the slightest restriction on Valva's custody rights. *Id.* ¶ 194. As AFC, Defendant Halpern had significant influence over the Family Court proceedings. Had he used that influence to persuade the courts or CPS to take steps against Valva, instead of participating in the smear campaign against Plaintiff, the kids would not have been left in Valva's custody and Tommy would almost certainly still be alive. *Id.* ¶ 195.

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint need only allege enough facts to "nudge its claims across the line from conceivable to plausible to proceed." *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal quotations omitted).

## ARGUMENT

I. **PLAINTIFF'S FEDERAL CLAIMS.**

A. **The Complaint Has Pled Sufficient Facts for Defendant Halpern to Be Held Liable Under § 1983.**

Defendant Halpern argues that any claim brought under 42 U.S.C § 1983 against him must be dismissed because Legal Aid attorneys are not state actors. Def. Mem. at 7. However, it is well-established that a private actor *can* be held liable under Section 1983 where she conspires with state actors to deprive a private person of their rights. *See Adickes v. S.h. Kress & Co.*, 398 U.S. 144, 152 (1970) ("To act 'under color' of law does *not* require that the accused be an officer of the state. It is enough that he is a willing participant in joint activity with the state or its agents") (emphasis added); *Dahlberg v. Becker*, 748 F.2d 85, 92 (2d Cir 1984).[2]

Indeed, courts have routinely found that a private citizen who furnishes false evidence to a state agent, thereby leading to a foreseeable infringement of another's rights, may be held liable under § 1983. *See, e.g.*, *Weintraub v. Board of Educ. of City of New York*, 423 F. Supp. 2d 38, 57 (E.D.N.Y 2006) ("[P]rivate parties may be liable for violation of § 1983 where they ma[ke] false allegations to a city agency that result[] in a deprivation of Plaintiff's constitutional rights."); *Grant v. Cafferri*, No. 19-CV-2148 (RRM) (LB), 2019 U.S. Dist. LEXIS 209237, at *30 (E.D.N.Y. Dec. 2, 2019) ("A private actor who makes false statements to the police with the intent to have an innocent person arrested can be held liable under § 1983 for invoking the state's power to intentionally violate a citizen's constitutional rights.") (internal quotation marks omitted); *Anilao v. Spota*, 340 F. Supp. 3d 224, 254 (E.D.N.Y. 2018) ("[T]he 'under color of state law' requirement can be met as to private defendants where they had a clear objective of influencing the action of the state and fabricated evidence to achieve that objective."); *Young v. Suffolk Cty.*, 705 F. Supp. 2d 183 (E.D.N.Y. 2010) (same).

---

[2] A private person who conspires with state actors to deprive someone of their rights may be held liable "even if the state actor himself is immune from liability." *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 624 (S.D.N.Y. 1999). Thus, even if the Court were inclined to grant any of the State actors' motion to dismiss on immunity grounds, it would not relieve Defendant Halpern from liability.

As set forth in detail in the Complaint, Defendant Halpern was indeed a "willing participant in joint activity with the state." *Adickes*, 398 U.S. at 152. He was well aware that Valva had been beating and starving the children, yet when CPS filed a Neglect Petition and sought to remove the children from Plaintiff's custody, Defendant Halpern did not merely remain silent – he actively provided lies to the Court about Plaintiff's unfitness to mother the children. Compl. ¶¶ 186-94; *Betts v. Shearman*, 751 F3d 78, 86 (2d Cir 2014) ("By jointly working to fabricate evidence of a crime, the private actors and the police officer shared the common goal of violating the Plaintiff's constitutional rights."). In so doing, he took sides with CPS in their retaliatory crusade against Plaintiff, and persuaded the court to deny Plaintiff's motion to dismiss the Neglect Petition. *Id.* ¶¶ 190-91. In short, Defendant Halpern joined hands with CPS when he should have been speaking out against their efforts.

**B. Plaintiff Has Stated A Malicious Prosecution Claim.**

Plaintiff alleges that, by concealing evidence of Valva's abuse and by fabricating evidence of Plaintiff's unfitness to parent, Defendant Halpern played an instrumental role in ensuring that the continuation of the neglect and abuse proceedings, and that, but for his misconduct, the Neglect Petition would have been immediately dismissed. Compl. ¶ 191.

Defendant Halpern's argument that he did not "initiate" any action against Plaintiff is irrelevant. A § 1983 claim for malicious prosecution may be brought against an individual for the improper "initiation *or continuation*" of a proceeding. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (emphasis added). Again, the Complaint alleges that, but for Halpern's intervention, the motion to dismiss the Neglect Petition would have been granted. Accordingly, it does not matter that CPS initiated the Neglect proceedings; the fact that he was responsible for their continuation is sufficient to hold him liable.

## C. Plaintiff Has Stated a Claim for Abuse of Process.

To state a malicious abuse of process claim, a plaintiff must plead that the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). The Complaint has pled each of these elements. First, the Complaint pleads that Defendant Halpern's testimony was instrumental in ensuring the continuation of the Neglect proceedings and, as such, he was complicit in the continuation of "regularly issued legal process." Compl. ¶ 191. The Complaint further pleads that Defendant Halpern was aware that Valva was abusing the children, but that rather than advise the court of that fact, he chose to join CPS in its efforts to strip Plaintiff of her custody. As for why Defendant Halpern chose to act in such a grossly irresponsible manner, the question of motive raises an issue fact that need not be resolved at the pleading stage. Indeed, courts have widely recognized that plaintiffs are not omniscient and that, in many circumstances, "purpose and intent may not be divined without some investigation and discovery." *Rosen ex rel. Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co.*, 113 F. Supp. 2d 615, 632 (S.D.N.Y. 2000); *Burt v. Maasberg*, Civil Action No. ELH-12-0464, 2014 U.S. Dist. LEXIS 41982, at *54 (D. Md. Mar. 28, 2014). In this case, it is eminently reasonable to infer that Defendant Halpern's concealment and fabrication of evidence was motivated by a desire to curry favor with CPS and/or conceal his own failures to properly investigate this case, both of which would be sufficient motives for a malicious abuse of process claim. *See Jovanovic v. City of N.Y.*, 2006 U.S. Dist. LEXIS 59165, at *32 n.4 (S.D.N.Y. Aug. 17, 2006) ("[M]otives such as protecting

one's own job or currying favor with prosecutors may exceed mere malice and may constitute a 'collateral objective.'"). The precise nature of Halpern's motive will reveal itself in discovery.[3]

Equally unavailing is the argument that abuse of process only applies to criminal proceedings. "In order to establish liability for malicious abuse of process under § 1983, a plaintiff must establish the claim's elements under state law as well as the deprivation of a constitutional right." *Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 446 (E.D.N.Y. 2012). New York courts have upheld abuse of process claims arising out of civil proceedings. *See, e.g.*, *Felske v. Bernstein*, 173 A.D.2d 677, 678, 570 N.Y.S.2d 331, 333 (App. Div. 2nd Dept. 1991). Thus, the only question is whether Plaintiff can also state a constitutional deprivation.

Here, Plaintiff has pled the violation of two federal constitutional rights in connection with the continuation of the Neglect proceedings. First, as explained in the Opposition to Defendant CPS's Motion to Dismiss, the continuation of those proceedings violated Plaintiff's Fourth Amendment rights by imposing restrictions on her ability to travel and by requiring her to attend court conferences. *See* Opp. to CPS's Mot. to Dismiss at 18 (citing *Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997); *Ashley v. Civil*, No. 14 Civ. 5559, 2019 U.S. Dist. LEXIS 56006, 2019 WL 1441124, at *7 (E.D.N.Y. Apr. 1, 2019)). Second, as Plaintiff explained in that same Opposition, the proceedings in Matrimonial Court were stayed pending the outcome of the Neglect proceeding. Accordingly, it is reasonable to infer that, had the Neglect proceedings been dismissed quickly, and had a trusted AFC come to Plaintiff's defense, she would have regained full custody of the children. *Id.* at 14. *See also Santosky v. Kramer,* 455 U.S. 745, 753 (1982) (there is "a fundamental liberty interest of natural parents in the care, custody, and management of their child."); *Warner*

---

[3] Nor can Halpern claim prejudice should discovery proceed into this claim. If *any* of the claims alleged against him survive, there will be discovery into his conduct and motives. If that discovery fails to reveal evidence of a collateral objective, then this claim will be dropped in any event.

*v. Orange Cnty. Dep't of Prob*., 115 F.3d 1068, 1071 (2d Cir. 1996) ("tort defendants, including

those sued under § 1983, are responsible for the natural consequences of [their] actions").

Defendants' cases are not to the contrary. Defendants rely on a sentence fragment from

*Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009), for the proposition that abuse of process will

not lie for civil actions. But *Green* was merely citing to the Second Circuit's holding in *Cook v.*

*Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994), which actually left open the question whether § 1983

claims could lie for abuse of process in civil proceedings. *Id.* ("True, in *Spear v. Town of West*

*Hartford*, we stated broadly that 'section 1983 liability … may not be predicated on a claim of

malicious abuse of process.' *Spear*, however, involved a section 1983 claim for malicious abuse

of civil process, and *dismissed it because the Troopers had not violated a federal right*.")

(emphasis added).

Having met the elements under state law and stated a violation of a constitutional right,

Plaintiff has adequately pled a § 1983 abuse of process claim.

### D. Plaintiff Has Pled a Stigma-Plus Claim

Defendant Halpern does not dispute that his false claims about Plaintiff were stigmatizing,[4]

or that Plaintiff has pled a "material state-imposed burden." Instead, his only argument is that his

statements before the court were privileged. Def. Mem. at 10-11. However, the litigation privilege

is a creature of *state law*, whereas the "stigma plus" doctrine sounds in federal constitutional law.

*Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994); *Duck v. Jacobs*, 739 F. Supp. 1545, 1551 (S.D.

Ga. 1990) ("In [invoking the litigation privilege]. . . the defendants fail to recognize that plaintiffs'

---

[4] Nor could she. *See Tafuto v. N.Y. State Office*, 2012 U.S. Dist. LEXIS 139463, at \*19 (S.D.N.Y. Sep. 25, 2012) ("branding the plaintiff a child abuser" constitutes a cognizable "stigma").

reputational liberty claim is grounded in the federal Constitution, not in the defamation law of Georgia.").

While Defendant cites two, unpublished district court cases finding that the privilege applies to "stigma plus" claims, Def. Mem. at 10-11, these cases are inconsistent with federal law. Indeed, it is well-established that where a "plaintiff brings a claim for violation of his rights under the federal Constitution, any question of privilege or immunity is governed by *federal law*," not state law. *Duck*, 739 F. Supp. at 1552 (emphasis supplied) (citing *Wood v. Strickland*, 420 U.S. 308 (1975), *ovrld. on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Butz v. Economou*, 438 U.S. 478 (1978); *Crowe v. Lucas*, 595 F.2d 985 (5th Cir. 1979)).[5]

Under federal law, no absolute privilege attaches to statements that are made before a court; hence, an overwhelming majority of federal courts have long held that the litigation privilege does *not* apply to federal "stigma-plus" claims. *See, e.g., Duck*, 739 F. Supp. at 1552; *Masvidal v. United States DOJ*, 716 F. Supp. 2d 1207, 1214 (S.D. Fla. 2010); *Marrero v. Hialeah*, 625 F.2d 499, 517 n.24. (5th Cir. 1980) (recognizing that a stigma-plus claim can succeed based on in-court statements even though such claims would be barred by the litigation privilege if brought under state defamation law). Accordingly, Defendant's motion to dismiss Plaintiff's stigma plus claim must be denied.

## II.     PLAINTIFF'S STATE CLAIMS.

### A. Plaintiff Has Stated a Claim for Wrongful Death.

---

[5] *See also Reed v. Williams*, No. CIV S-05-0060 RRB GGH P, 2007 U.S. Dist. LEXIS 55598, at *11 (E.D. Cal. July 25, 2007) ("In this action based solely on alleged violations of the federal Constitution, federal law applies in terms of substantive, privilege and discovery law.") (citing *Kerr v. USDC*, 511 F.2d 192, 198 (9th Cir. 1975)).

Defendant Halpern argues that he cannot be held liable for Tommy's wrongful death because Valva's abuse was an unforeseen, intervening factor that broke any causal chain. This is incorrect.

As an initial matter, "questions of intervening or superseding cause generally are for the jury and only rarely can be decided as a matter of law." *Eun Bin Lim v. Parent*, 176 F. Supp. 2d 207, 210 (E.D.N.Y. 2001) (citing *Parsons v. Honeywell, Inc*., 929 F.2d 901, 905 (2d Cir. 1991)). Moreover, "[t]he governing rule in New York has long been settled and is perfectly clear: an intervenor's action will not break the necessary chain of causation where they are 'a normal or foreseeable consequence of the situation created by the defendant's negligence.'" *Stagl v. Delta Airlines, Inc*., 52 F.3d 463, 473 (2d Cir. 1995) (quoting *Derdiarian v. Felix Contracting Corp*., 51 N.Y.2d 308, 315-16 (1980)).

Here, there was nothing "unforeseen" about Valva's abuse. The Complaint alleges that Plaintiff had provided Defendant Halpern with ample evidence that Valva was beating and starving the children, and that Defendant Halpern was well aware that Valva had viciously beaten Tommy on January 13, 2018. Compl. ¶¶ 186-88, 193. It was entirely foreseeable that Valva's abuse would continue if he was permitted to retain custody of the children. It was equally foreseeable that an accusation, by a court-appointed attorney from the esteemed Legal Aid Society, that Plaintiff was beating her children, would lessen the likelihood that Plaintiff would regain custody. Rather, had Defendant done what was required under Social Services Law § 413 and 22 N.Y.C.R.R. § 7.2 and notified the court and the appropriate authorities of the abuse, it is virtually certain that Tommy would still be alive. Compl. ¶ 195.

**B. Plaintiff Has Stated a Claim for Legal Malpractice.**

To establish a legal malpractice claim, a plaintiff must plead (1) negligence by the attorney and (2) that but-for that negligence, the plaintiff would not have suffered the loss. *Cannistra v. O'Connor, McGuinness, Conte, Doyle, Oleson & Collins*, 286 A.D.3d 314, 317 (2d Dep't 2011). Plaintiff has established both elements.

As to the first prong, the question is whether the attorney breached the duty of care toward the client. *Id.* As AFC, Defendant Halpern's duty of care was clearly defined by the statute governing her appointment: 22 N.Y.C.R.R. § 7.2(d) provides that "[w]here the child is the subject, the attorney for the child must zealously advocate the child's position." The statute further provides that:

> In ascertaining the child's position, the attorney for the child must consult with and advise the child to the extent of and in a manner consistent with the child's capacities, and have a thorough knowledge of the child's circumstances.

*Id.* § 7.2(d)(1). Defendant Halpern, who *never once* met with the children (Compl. ¶ 188), clearly violated this duty. *Matter of Jennifer VV. v. Lawrence WW.*, 122 N.Y.S.3d 707, 710 (App. Div. 3rd Dept. 2020) (AFC "failed to fulfill his essential obligation" by failing to meet with children). His duty was further defined by New York Social Services Law §§ 413 & 414, which required him to report any "reasonable cause" he had to suspect that Valva was abusing the children.

Both common sense and these statutory provisions required that Defendant Halpern notify the Court when confronted with conclusive evidence that Valva was beating and starving the children. It is, frankly, startling that the Legal Aid Society would take the position that concealing that evidence from the Court is consistent with an AFC's duty toward the children; even more chilling is their suggestion that an AFC who fabricates evidence of abuse against the only parent who *is not* beating and starving the kids is still acting consistent with his duties under the law.

Defendants argue that it is "speculative" that the children would have been returned to Plaintiff's custody, or that Tommy would not have been killed, but for Defendant Halpern's actions. Defs' Mot. at 22. However, as an initial matter, those are one and the same: if Plaintiff had sole custody of the children, Valva would have had the ability to starve, beat, or murder any of the children by keeping them in a freezing garage overnight. Nor is it "speculative" to suppose that Plaintiff might have regained custody had Defendant Halpern done his duty. As court-appointed attorneys, AFCs have a level of credibility that the parties to a divorce dispute will never have. Insofar as their statutory duty is solely to protect the children's interest, their representations carry far more weight than those of any other party that appears before a Family Court. It is thus not speculative at all to suppose that if AFC Halpern had told the Court the truth – i.e., that Valva was sadistic and physically abusive, and that Plaintiff had *not*, in fact, ever "admitted" that she hit or neglected her children, as Halpern had falsely claimed (¶ 190-192). – the court would have instantly dismissed the Neglect Petition and issued a stay away order against Valva.

**C. Plaintiff Has Pled a Claim under N.Y. Social Services Law §§ 413.**

Defendant Halpern's argument that he is not a "mandatory reporter" under N.Y. Social Services Law § 413 is incorrect. Section 413 broadly imposes a requirement on anyone who has "reasonable cause to suspect that a child *coming before them in their professional or official capacity*" is being abused. N.Y. Soc. Serv. Law § 413 (emphasis added). An AFC plainly interacts with the children in his or her professional capacity. Section 413 also makes all "social service workers" subject to the mandatory requirement; and while that section does not explicitly define what constitutes a social service worker, common sense suggests that when an attorney is appointed by the court to represent the best interests of the child, they should be categorized as social workers – at least for purposes of ascertaining whether they have a duty to report.

## CONCLUSION

For the foregoing reasons, Defendant Halpern's Motion to Dismiss should be denied in its

entirety.

Dated: New York, New York
      May 17, 2021

                                 Respectfully Submitted,

                                 **JON L. NORINSBERG, ESQ, PLLC**

                                 Jon L. Norinsberg, Esq.
                                 *Attorney for Plaintiff*
                                 110 East 59th Street, Ste 3200
                                 New York, New York 10022
                                 Tel: (212) 791-5396
                                 Fax: (212) 406-6890
                                 jon@norinsberglaw.com