UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JUSTYNA ZUBKO-VALVA, as Mother and
Natural Guardian of ANTHONY VALVA and
ANDREW VALVA, and as Administratrix of the
Estate of THOMAS VALVA, and JUSTYNA
ZUBKO-VALVA individually,

                              Plaintiff,          **20-cv-2663 (JMA)(ARL)**

                    -against-

THE COUNTY OF SUFFOLK, et al.

                              Defendants.

_____

**MEMORANDUM OF LAW IN SUPPORT
OF COUNTY DEFENDANTS' MOTION PURSUANT
TO F.R.C.P RULE 12(b)(6)**


Dated: Hauppauge, New York
        December 18, 2020


                              Respectfully,

                              Dennis M. Cohen
                              Suffolk County Attorney
                              Attorney for County Defendants
                              H. Lee Dennison Building
                              100 Veterans Memorial Highway
                              P.O. Box 6100
                              Hauppauge, New York 11788

                    BY:       *Brian C. Mitchell*
                              Brian C. Mitchell
                              Assistant County Attorney

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................ 1

STANDARD OF REVIEW ................................................................................... 4

POINT I
THE COMPLAINT FAILS TO ALLEGE A CLAIM FOR
A DENIAL OF DUE PROCESS .......................................................................... 5

POINT II
THE PLAINTIFF CANNOT ESTABLISH THE ELEMENTS
OF A MALICIOUS PROSECUTION CLAIM ................................................... 11

    A.  The Plaintiff Was Not Criminally Prosecuted ............................................ 12

    B.  Plaintiff Was Not Taken Into Custody ........................................................ 12

Probable Cause .................................................................................................. 15

Absolute Immunity ............................................................................................ 15

Qualified Immunity............................................................................................ 17

POINT III
THE COMPLAINT FAILS TO ESTABLISH THE ELEMENTS OF
A §1983 ABUSE OF PROCESS CLAIM ......................................................... 18

Denial of a Fair Trial......................................................................................... 20

Stigma Plus Claim............................................................................................. 20

Conspiracy ........................................................................................................ 21

POINT IV
THE CLAIMS AGAINST THE COUNTY OF SUFFOLK MUST
BE DISMISSED AS THE COMPLAINT FAILS TO SUFFICIENTLY
ALLEGE AN UNDERLYING VIOLATION OF THE PLAINTIFF'S
CONSTITUTIONAL RIGHTS ......................................................................... 21

POINT V
PLAINTIFF'S PENDANT STATE CLAIMS MUST BE DISMISSED
FOR FAILING TO COMPLY WITH THE REQUIREMENTS OF
GEN. MUN. LAW §50 AND ON THE MERITS ............................................... 22

i

CONCLUSION.................................................................................................................. 26

# TABLE OF AUTHORITIES

*Apostolakis v. Centereach Fire District*,
    300 A.D.2d 516, 752 N.Y.S.2d 691 (2d Dep't 2002) ............................................................... 24

*Arteaga v. State*,
    72 N.Y.2d 212 (1988) ............................................................................................................. 25

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ..................................................... 4, 19

*Back v. Hastings on Hudson Union Free School Dist.*,
    365 F.3d 107 (2d Cir. 2004) ..................................................................................................... 17

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................................................... 4

*Bernard v. County of Suffolk*,
    356 F.3d 495 (2d Cir. 2004) ..................................................................................................... 17

*Board of Regents v. Roth*,
    408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed. 2d 548(1972) ............................................................... 7

*Briggs v. Cty. of Monroe*,
    293 F. Supp. 3d 379 (W.D.N.Y. 2018) ..................................................................................... 7

*Bryne v. City of N.Y.*,
    736 F. App'x 263 (2d Cir. 2018) ............................................................................................. 16

*Bush v. City of Utica*,
    948 F.Supp.2d 246 (N.D.N.Y. 2013) ......................................................................................... 6

*Butz v. Economou*,
    438 U.S. 478 (1978) ................................................................................................................. 16

*Callahan v. City of New York*,
    90 F.Supp.3d 60 (E.D.N.Y. 2015) ..................................................................................... 12, 13

*Campbell v. Brentwood Union Free Sch. Dist.*,
    904 F.Supp.2d 275 (E.D.N.Y. 2012) ......................................................................................... 6

*Chambers v. N. Rockland Cent. Sch. Dist.*,
    815 F.Supp.2d 753 (S.D.N.Y. 2011) ....................................................................................... 10

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ....................................................................................................... 3

iii

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986) ............................................................................................ 21

*Coleman v. Cty. of Suffolk*,
    174 F. Supp. 3d 747 (E.D.N.Y. 2016) ................................................................ 8

*Coleman v. Cty. of Suffolk*,
    685 F. App'x 69 (2d Cir. 2017) ....................................................................... 8, 9

*Cook v. Sheldon*,
    41 F.3d 73 (2d Cir.1994) .................................................................................. 19

*Cty. of Sacramento v. Lewis*,
    523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) .............................. 9, 10

*Cuffy v. City of New York*,
    69 N.Y.2d 255, 505 N.E.2d 937, 513 N.Y.S.2d 372 (1987) ............................ 25

*DeAngelis v. Lutheran Medical Center*,
    58 N.Y.2d 1053, 449 N.E.2d 406, 462 N.Y.S.2d 626 ..................................... 24

*DeShaney v. Winnebago County Department of Social Services*,
    489 U.S. 189 ................................................................................................... 5, 6

*Dietz v. Damas*,
    932 F.Supp. 431 (E.D.N.Y. 1996) .................................................................... 12

*Doe v. Dep't of Pub. Safety ex rel. Lee*,
    271 F.3d 38 (2d Cir.2001) .............................................................................. 20, 21

*Emerson v. City of New York*,
    740 F.Supp.2d 385 (S.D.N.Y.2010) ................................................... 12, 13, 16, 17

*Estate of Keenan v. Hoffman-Rosenfeld*,
    2020 WL 6494881 (2d Cir. Nov. 5, 2020) ....................................................... 17

*Estate of Keenan v. Hoffman-Rosenfeld*,
    WL 3416374 (E.D.N.Y. July 29, 2019) ............................................................ 17

*Ginsburg v. City of Ithaca*,
    839 F.Supp.2d 537 (N.D.N.Y. 2012) ................................................................. 4

*Graham v. City of New York*,
    869 F.Supp.2d 337 (E.D.N.Y. 2012) ................................................................ 13

*Grune v. Rodriguez,*
   176 F.3d 27 (2d Cir. 1999)................................................................................................ 10

*Hagans v. Nassau Cty. Dep't of Soc. Servs.,*
   2020 WL 1550577 (E.D.N.Y. 2020).................................................................................. 14

*Hardy v. New York City Health & Hosp. Corp.,*
   164 F.3d 789 (2d Cir. 1999)............................................................................................... 22

*HB v. Monroe Woodbury Central School District,*
   2012 WL 4477552 ................................................................................................................ 8

*Hill v. City of New York,*
   45 F.3d 653 (2d Cir. 1995)................................................................................................. 17

*Imbler v. Pachtman,*
   424 U.S. 409 (1976)............................................................................................................ 16

*In Re Rachel S.D.,*
   113 A.D.3d 450, 979 N.Y.S.2d 22 (1st Dept.  Sept. 2014).............................................. 12

*Iqbal v. Hasty,*
   490 F.3d 143 (2d Cir. 2007)................................................................................................. 4

*James v. Suffolk County Correctional Facility,*
   2014 WL 4659300 (E.D.N.Y. Sept. 17, 2014) ................................................................... 3

*Jocks v. Tavernier,*
   316 F.3d 128 (2d Cir. 2003)............................................................................................... 12

*Jones v. Nickens,*
   961 F.Supp.2d 475 ................................................................................................................ 7

*Jovanovic v. City of New York,*
   486 Fed.Appx. 149 (2d Cir. 2012)..................................................................................... 20

*Kapps v. Wing,*
   404 F.3d 105 (2d Cir. 2005)................................................................................................. 7

*Kinzer v. Jackson,*
   316 F.3d 139 (2d Cir. 2003)............................................................................................... 11

*Lauer v. City of New York,*
   95 N.Y.2d 95, 733 N.E.2d 184, 711 N.Y.S.2d 112 (2000)......................................... 23, 24

*Li v. City of New York,*
   246 F.Supp.3d 578 (E.D.N.Y. 2017) ................................................................................. 12

v

*Lombardi v. Whitman,*
  485 F.3d 73 (2d Cir. 2007)............................................................................... 6

*Manganiello v. City of New York,*
  612 F.3d 149 (2d Cir. 2010)...................................................................... 11, 12

*Matican v. City of N.Y.,*
  524 F.3d 151 (2d Cir. 2008)...................................................................... 6, 9, 10

*Matter of Diane B.,*
  96 Misc.2d............................................................................................... 16

*McClenic v. Shmettan*, 15-CV-00705 (SJF)(SIL),
  2016 WL 3920219 (E.D.N.Y. July 15, 2016)............................................. 12

*Mitchell v. City of New York,*
  841 F.3d 72 (2d Cir. 2016)........................................................................... 11

*Monell v. Dept. of Social Services*,
  436 U.S. 658, 98 S.Ct. 2018(1978)............................................................. 21

*Morris v. Silvestre,*
  604 Fed. App'x 22 (2d Cir. 2015).............................................................. 12

*Mortimer v. City of N.Y.,*
  No. 15-CV-7186, 2018 WL 1605982 (S.D.N.Y. Mar. 29, 2018) ............... 14

*V.S. v. Muhammad,*
  595 F.3d 426 ............................................................................................. 25

*Negron v. State of New York*,
  257 A.D.2d 652......................................................................................... 23

*Okin v. Vill. of Cornwall-on-Hudson Police Dep't,*
  577 F.3d ............................................................................................... 8, 9, 22

*Pena v. DePrisco,*
  432 F.3d 98 (2d Cir. 2005)........................................................................... 8

*Rentas v. Ruffin*,
  816 F.3d 214 (2d Cir. 2016)....................................................................... 22

*Richardson v. N.Y.C. Health & Hosps. Corp.,*
  2009 WL 804096 (S.D.N.Y. Mar.25, 2009) ............................................. 19

*Robertson v. Allen*,
   2016 WL 205381 (N.D.N.Y. Jan. 15, 2016)........................................................17

*Sealed v. Sealed*, 33d F.3d 51, 56 (2d Cir. 2003) and *Hilbert S. v. County of Tioga*,
   2005 WL 1460315 (N.D.N.Y. June 21, 2005) ......................................................7

*Sevilla v. Perez,* 15-CV-3528(KAM)(LB),
   2016 WL 5372792 (E.D.N.Y. Sept. 26, 2016) .....................................................12

*Siegert v. Gilley*,
   500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)......................................21

*Singer v. Fulton Cty. Sheriff*,
   63 F.3d 110 (2d Cir. 1995).................................................................................21

*Slater v. Mackey*,
   2015 WL 6971793 ( E.D. N.Y. Nov. 10, 2015)...................................................19

*Southerland v. City of New York*,
   680 F.3d 127 .....................................................................................................14

*Sundbye v. Oguleye*,
   3 F.Supp.2d 254 (E.D.N.Y. 1998) .....................................................................12

*Swartz v. Insogna*,
   704 F.3d 105 (2d Cir. 2013)....................................................................11, 12, 13

*Tango v. Tulevech*,
   61 N.Y.2d 34 (1983) .....................................................................................3, 25

*Tenenbaum v. Williams*,
   193 F.3d 581 .............................................................................................3, 14, 25

*Tenenbaum v. Williams*,
   862 F. Supp. 962 (E.D.N.Y. 1994) ....................................................................25

*Torres v. City of New York*,
   2017 WL 4325822 (E.D.N.Y. 2017)..................................................................20

*Town of Castle Rock v. Gonzales*,
   545 U.S. ..............................................................................................................7

*Tufaro v. City of N.Y.,*
   2014 WL 4290631 (S.D.N.Y. Aug. 28, 2014) ......................................................6

*van Emrik v. Chemung Cty. Dep't of Soc. Servs.*,
   911 F.2d 863 (2d Cir. 1990).................................................................................18

*Walden v. Wishengard,*
  745 F.2d 149 (2d Cir. 1984)................................................................. 16, 17

*Washington v. County of Rockland,*
  373 F.3d 310 (2d Cir. 2004)................................................................ 11, 13

*Wilkinson v. Russell,*
  182 F.3d 89 (2d Cir. 1999)................................................................. 17, 18

*Willey v. Kirkpatrick,*
  801 F.3d 51 (2d Cir. 2015)...................................................................... 12

*Williams v. King,*
  796 F. Supp. 737 (E.D.N.Y. 1992) ......................................................... 10

*Yuan v. Rivera,*
  48 F.Supp.2d 335 ...................................................................................... 13

*Zahrey v. Coffey,*
  221 F.3d 342 (2d Cir. 2000)..................................................................... 20

**PRELIMINARY STATEMENT In**

Defendants the County of Suffolk,  Suffolk County Department of Social Services employees Michele Clark, Edward Heepe, Robert Leto, Jennifer Lantz, Melissa Estrada, Lydia Sabosto, Jean Montague and Assistant Suffolk County Attorney Randall Ratje, defendants in this civil rights action pursuant to 42 U.S.C. §1983 ("County defendants") submit this memorandum of law in support of their motion pursuant to Fed.R. Civ. P. Rule 12(b)(6) for an order dismissing the complaint as against them for failure to state a claim upon which relief can be granted as against them.

This claim arises out of the tragic death of plaintiff 's son Thomas Valva on January 17, 2020.  Defendants Michael Valva (Valva) and Angelina Pollina have both been criminal charged with causing Thomas' death.   Plaintiff  Justyna Zubko-Valva (Zubko) is Thomas' mother.   At the time of his death, Thomas was in the custody of Michael Valva pursuant to validly issued order from the Nassau County Supreme Court in relation to an ongoing matrimonial proceeding between  Valva and Zubko.     Plaintiff has brought this action against any party conceivably connected to the matrimonial and family court actions concerning Michael Valva and Justyna Zubko-Valva, including, *inter alia*, the Judge presiding over the matrimonial action, the lawyers representing the plaintiff and her children, employees of the school where Thomas attended, employees of Suffolk County Child Protective Services and the Assistant County Attorney that litigated abuse and neglect proceedings against both the plaintiff and Michael Valva.     Plaintiff essentially claims, without any evidence other than speculation and conjecture,  that each and every one of the defendants, including several attorneys and a sitting New York State Supreme Court Judge, all lied and/or fabricated evidence against her, or conspired to do the same.

The complaint filed asserts a number of claims against the Suffolk County defendants alleging that they failed to properly investigate the several claims of abuse made against Valva

1

and that conversely they maliciously prosecuted Zubko by falsely claiming she had neglected the children as well.   Plaintiff also brings an abuse of process claim, a fourteenth amendment "stigma plus" claim and *Monell* claim against the County.   Plaintiff also brings a claim of conspiracy among the several defendants to do the above.

As County defendants now explain, all of the plaintiff's claims against the County defendants are without merit and they must be dismissed.   Plaintiff's § 1983 due process claims for failing to properly investigate claims of abuse or protect the subject children must be dismissed as the State does not owe a duty to protect individuals from acts of third parties under the Due Process Clause.   Plaintiff has not alleged any special relationship that would give rise to such a duty, nor has plaintiff sufficiently asserted a claim under the "state crated danger" theory of liability.   Accordingly, any claims the plaintiff brings against the County defendants relating to the death of her son at the hands of his father Michael Valva must be dismissed.

Similarly, all claims brought by the plaintiff against the County defendants relating to the neglect proceedings brought against her in Suffolk County Family Court  must be dismissed. Plaintiff's § 1983 malicious prosecution claims cannot be based on Family Court proceedings and they must also fail because she does not allege that she was arrested or detained in connection with the Family Court proceeding.   Any allegation that the plaintiff suffered a fourth amendment violation based upon the custody status of her children is baseless, as the neglect proceeding in Family Court had no impact upon the custody determination that had already been made in the Nassau County Supreme Court.  To the extent that there was a deprivation of her right to visit her children it was entirely temporary and does not rise to the level of a cognizable constitutional violation.[1]

---

[1] Attached hereto as Exhibit A are the relevant Suffolk County Family Court documents relating to the plaintiff's neglect proceedings as well as those of defendant Valva.    This includes documents supporting the FCA 1029

The several Suffolk County CPS Caseworkers and their supervisors are entitled to absolute immunity for the alleged failure to investigate claims and for the malicious prosecution of Family Court child protective proceedings.  The claim against Assistant County Attorney Ratje must be dismissed as he too is entitled to absolute prosecutorial immunity.  Even if it is determined that the defendants are not entitled to absolute immunity,  all the individual County defendants are entitled to qualified immunity because they did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Since plaintiffs state no claim for violation of a constitutional right, they have no § 1983 conspiracy claim, no can their *Monell* claim against the County survive.  Moreover, the plaintiff fails to sufficiently plead facts to establish a County policy or custom that was the proximate cause of the alleged constitutional violations.

Plaintiff's "stigma plus" due process claim must fail as she has failed to allege a state imposed burden.   Lastly  plaintiff's pendent New York State claims are barred by plaintiffs' failure to comply with the conditions precedent to suit of N.Y. General Municipal Law §50-e et seq; and the County defendants are entitled to absolute immunity.  *Tenenbaum v. Williams*, 193 F.3d 581, at 606 (citing *Tango v. Tulevech*, 61 N.Y.2d 34, 40 (1983).  In the alternative, without a viable §1983 claim, the Court should decline jurisdiction over plaintiffs' pendent state claims.

---

proceedings, the Neglect Petitions and supporting documents against both Valva and Zubko,  the Temporary Orders of Protection issued by the Court, and the several Orders by Suffolk Family Court Judge Bernard Cheng, including his decision after the Neglect hearing.   The County defendants respectfully submit that the Court may consider these documents on this motion to dismiss pursuant to Fed.R.Civ.P. 12 (b)(6) as they1) are integral to the complaint and the plaintiff has relied on and referenced them in the complaint (*Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002), and 2)  the Court may take judicial notice of these Orders of the Family Court.  *James v. Suffolk County Correctional Facility*, 2014 WL 4659300 (E.D.N.Y. Sept. 17, 2014).

## STANDARD OF REVIEW

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " *Ginsburg v. City of Ithaca*, 839 F.Supp.2d 537, 540 (N.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' FED. R. CIV. P. 8(a)(2), more than mere conclusions are required. "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.' " Id. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." *Id.; see also Twombly*, 550 U.S. at 570, 127 S.Ct. 1955 (requiring "only enough facts to state a claim to relief that is plausible on its face"). However, a plaintiff still must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). A complaint that consists merely of "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" or " 'naked assertion[s]' devoid of 'further factual enhancement' " does not meet the plausibility standard. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). The plaintiff must allege enough facts to state a claim to relief that is plausible on its face so that a court can "draw the reasonable inference that the defendants were liable for the misconduct alleged." See *Ashcroft v. Iqbal,* 129 S.Ct. 1937, at 1949 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, at 570 (2007). Based on the following, the defendant respectfully submits that the plaintiff has failed state a claim for which she is entitled to relief.

4

**POINT I**

**THE COMPLAINT FAILS TO ALLEGE A CLAIM**
**FOR A DENIAL OF DUE PROCESS**

As noted above, the complaint filed asserts a claim for a denial of substantive due process based upon an alleged failure of the defendants to protect Thomas Valva from the harm of others. However, claims of this nature have not been recognized by the Courts to which they have been presented. See e.g. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 200 (1989 ("In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.")

In *DeShaney*, the infant plaintiff was repeatedly beaten by his father. The defendant received complaints about the beatings, but did not remove the child from the father's custody. Ultimately, the child was beaten so severely that he suffered brain damage and profound retardation. In the ensuing section 1983 lawsuit, the plaintiff claimed that his substantive due process rights were violated because the municipality failed to intervene to protect him against his father's violence. The Supreme Court in *DeShaney* determined that the plaintiff's complaint did not state a constitutional cause of action under the due process clause. As the Court determined, the due process clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." Id. at 195. The Court further stated:

> our cases have recognized that the Due Process Clauses generally confer no
> affirmative right to governmental aid, even where such aid may be necessary to
> secure life, liberty, or property interests of which the government itself may not
> deprive the individual. . . . If the Due Process Clause does not require the State to
> provide its citizens with particular protective services, it follows that the State

> cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them.  Id. at 196-97 (citations omitted).

The claim in the instant matter is similar to that presented in *DeShaney*.   As tragic as the events of the plaintiff's claim may be, they do not give rise to a claim for a constitutional violation and must be dismissed.

*DeShaney* makes it clear that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney  at* 197. Nevertheless, the Second Circuit has "recognized two exceptions to this general principle." *Matican v. City of N.Y.,* 524 F.3d 151, 155 (2d Cir. 2008).  First, "the state or its agents may owe a constitutional obligation to the victim of private violence if the state had a 'special relationship' with the victim." *Matican*, 524 F.3d at 155. (emphasis added by defendants). "Special relationships ordinarily arise if a government actor has assumed an obligation to protect an individual by restricting the individual's freedom in some manner, as by imprisonment." *Lombardi v. Whitman*, 485 F.3d 73, 79 n.3 (2d Cir. 2007); *see also Campbell v. Brentwood Union Free Sch. Dist.*, 904 F.Supp.2d 275, 280 (E.D.N.Y. 2012).

The defendants respectfully submit that the *DeShaney/Matican*  "special relationship" exception is inapplicable to the facts of this case. A "special relationship" of the sort contemplated by *DeShaney* can only be created where the state assumes custody or control of the victim who is subject to the harm by the third party. *See, e.g., Campbell*, 904 F.Supp.2d at 280 ("The touchstone of the 'special relationship' exception to the *DeShaney* rule is the requirement that the state has somehow placed the victim within its custody."); *Bush v. City of Utica*, 948 F.Supp.2d 246, 256 (N.D.N.Y. 2013) (finding plaintiffs' reliance on the "special relationship" exception misplaced where "decedents were not in the custody of the state in any manner" during the relevant time period); *Tufaro v. City of N.Y.,* 2014 WL 4290631, at *3 (S.D.N.Y. Aug.

6

28, 2014) ("Because Plaintiff was not in involuntary custody at the time of her attack, she fails to satisfy this exception to *DeShaney*.").

In examining the issue of a "special relationship" in the instant matter, the focus is on the relationship between the defendants and the victim (Thomas Valva). It cannot be said that Thomas was in the custody of the state in any manner at any time. Moreover, the defendants are not aware of any case in which the special relationship exception applied under circumstances where the individual was not in the physical custody of law enforcement or the government. *Briggs v. Cty. of Monroe*, 293 F. Supp. 3d 379, 388 (W.D.N.Y. 2018). Accordingly any claim for a denial of due process based upon a "special relationship" theory must fail.

To the extent the complaint alleges a failure of the several Suffolk CPS workers to properly investigate or prevent the conduct of Michael Valva, it too must be dismissed. "A benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. at 756. "It is well settled that '[t]he requirements of procedural due process apply only to deprivations of interests encompassed by the Fourteenth Amendment's protection of liberty and property.'" *Jones v. Nickens*, 961 F.Supp.2d 475 at 489 citing *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed. 2d 548, 569(1972). "Where [state] statutes or regulations meaningfully channel official discretion by mandating a defined outcome, a [protected] interest will be found.' *Id.*, citing *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005). However, New York's child protective legislation "does not create an entitlement or expectation of a particular outcome (but merely authorizes actions and remedies to address the reported abuse) so as to trigger due process protection." *Jones*, 961 F.Supp.2d at 492 citing *Sealed v. Sealed*, 33d F.3d 51, 56 (2d Cir. 2003) and *Hilbert S. v. County of Tioga*, No. 3:03-CV-193, 2005 WL 1460315 (N.D.N.Y. June 21,

2005).      Accordingly, there can be no claim against the several CPS workers for their alleged failure to properly investigate claims of abuse against Michael Valva.

Plaintiff's claim fairs no better under the "state created danger" theory of liability.    A state-created danger requires the plaintiff to plead that the municipal defendant assisted in creating or increasing the danger to the harmed individual through specific interaction with the *wrongdoer*.  *Coleman v. Cty. of Suffolk*, 174 F. Supp. 3d 747 (E.D.N.Y. 2016), aff'd, 685 F. App'x 69 (2d Cir. 2017*); see also; HB v. Monroe Woodbury Central School District*, 2012 WL 4477552, at *10.  The Second Circuit has recognized the distinction between the two exceptions to *DeSahney* by noting that "special relationship" liability arises from the relationship between the state and a particular victim, whereas "state created danger" liability arises from the relationship between the state and the private assailant.  *Pena v. DePrisco*, 432 F.3d 98, 109 (2d Cir. 2005).    Thus, there is no state created danger where the plaintiff's claim is premised upon a defendants failure to take additional actions to protect the plaintiff from harm.  *HB v. Monroe Woodbury Central School District*, 2012 WL 4477552.   To warrant due process liability, under a state created danger theory of liability, the conduct must rise to the level of an "affirmative act" that "communicates ... official sanction of private violence" to the perpetrator. *Coleman v. Cty. of Suffolk*, 685 F. App'x 69, 71 (2d Cir. 2017) *citing, Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d at 429, 435.

Here the plaintiff pleads no facts of any interaction between the defendants and the assailant Michael Valva that would embolden him to act, or otherwise lead him to believe that he could act without fear of reprisal or court action.  Indeed, as evidenced by the attached Family Court documents and partially referenced in the complaint itself, at the very same time a neglect proceeding was initiated against the plaintiff  Zubko, a neglect petition was also filed by the Suffolk CPS against defendant Valva, based upon an allegation that he physically abused  the

children.    This case is not akin to *Okin*, where officers responding to 911 calls repeatedly and "openly expressed camaraderie" with a physical abuser and contempt for his victim. *See id.* at 430.    Rather, the record here reveals affirmative actions taken by defendants *against*  Valva, including the filing the neglect petition for the very purpose of protecting the child victim from his abuse. *Coleman*, 685 F. App'x 69, 71 (2d Cir. 2017).    Moreover, the complaint notes that, in response to a complaint made by the plaintiff, CPS worker Mejia, attempted to investigate the complaint through an affirmative contact with defendant Valva. (See Complaint DE 1 at paragraph 133).    That Valva refused to respond to the inquiry is not evidence of an affirmative act that communicates an official sanction of private violence.    Further, to the extent the plaintiff claims that the decision by CPS workers to "close" investigations against Valva could support a "state crated danger" theory, there are no allegations in the complaint that Valva was ever even aware of the existence of a complaint or the reasons why the complaint may have not be persued. Accordingly, there can be no claim under the state created danger theory of liability.

Finally, to establish a constitutional violation, even if the claims fell within either the special relationship or state-created danger exception, plaintiffs would have to show that defendants' behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Matican*, 524 F.3d at 155.    As the Supreme Court has explained, intentionally inflicted injuries are the "most likely to rise to the conscience-shocking level." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Conversely, "negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* Between these two extremes, "reckless inflicted harms are context-dependent 'closer calls.' " *Okin v. Vill. of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (citation omitted).    For instance, "harm inflicted recklessly or with deliberate indifference does not shock the conscience in the context of a time-sensitive emergency, such as a high-speed

9

chase." *Matican*, 524 F.3d at 158. "However, even in the context of deliberative decision-making, the Second Circuit has recognized that where state actors have been subject 'to the pull of competing obligations,' the courts should be reluctant to impose 'broad constitutional liability for the government officials, whose decision making might be inhibited by the threat of lawsuits." *Chambers v. N. Rockland Cent. Sch. Dist.*, 815 F.Supp.2d 753, 770 (S.D.N.Y. 2011) (quoting Matican, 524 F.3d at 159) (internal citation omitted).

It has been determined that making a bad decision or acting negligently is not the sort of conscience shocking behavior that violates the constitution.  See Id. at 848-49; see also *Grune v. Rodriguez*, 176 F.3d 27, 33 (2d Cir. 1999)(to demonstrate a substantive due process violation, the plaintiff must show that the defendants acted with more than mere negligence); *Williams v. King*, 796 F. Supp. 737, 742 (E.D.N.Y. 1992)(a mere lack of due care by a state official is not cognizable as a deprivation under the Fourteenth Amendment).  It cannot be said that the conduct of the defendants as described in the instant complaint rises to the level of a constitutional violation.   At worst, the complaint alleges conduct that amounts to bad decisions, at best it merely establishes decisions made subject 'to the pull of competing obligations' attendant to child protective investigations, in which workers are often faced with the difficult task of having to evaluate serious allegations of abuse, many times being made by young and vulnerable individuals, while facing the inevitable denials of conduct from the accused.  Accordingly, the substantive due process claims must be dismissed.

## POINT II
## THE PLAINTIFF CANNOT ESTABLISH THE ELEMENTS
## OF A MALICIOUS PROSECUTION CLAIM

The complaint filed by the plaintiff alleges claims of malicious prosecution pursuant to §1983 and state law, respectively.  The malicious prosecution the plaintiff claims to have been subjected to was the child protective proceedings.

In order to prevail on a malicious prosecution claim under §1983 or New York state law, "a plaintiff is required to demonstrate: (i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) 'that there was no probable cause for the proceeding'; and (iv) 'that the proceeding was instituted with malice.' " *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).  A plaintiff who raises a malicious prosecution claim under §1983 must also show a "seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)(internal quotation marks and citation omitted).  See *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013)(" ... to be actionable under section 1983 there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures.").  *See also Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)("In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of her rights under the Fourth Amendment, ... and must establish the elements of a malicious prosecution claim under state law[.]" (citations omitted)).

The plaintiff is wholly unable to make out her malicious prosecution claims because she was not criminally prosecuted or subjected to a Fourth Amendment seizure.

11

**A. The Plaintiff Was Not Criminally Prosecuted.**

It is well settled that to establish a §1983 malicious prosecution claim, a plaintiff must prove that that he or she was criminally prosecuted.  See, e.g., *Morris v. Silvestre*, 604 Fed. App'x 22, 24 (2d Cir. 2015); *Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015); *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013); *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003).  The plaintiff cannot meet this burden because child protective proceedings are civil in nature.  See e.g. *Sundbye v. Oguleye*, 3 F.Supp.2d 254, 262 n.4 (E.D.N.Y. 1998); *Dietz v. Damas*, 932 F.Supp. 431, 447 (E.D.N.Y. 1996); *Sevilla v. Perez,* 15-CV-3528(KAM)(LB), 2016 WL 5372792, *9 (E.D.N.Y. Sept. 26, 2016);  *In Re Rachel S.D.*, 113 A.D.3d 450, 979 N.Y.S.2d 22 (1st Dept.  Sept. 2014).

**B. Plaintiff Was Not Taken Into Custody.**

The plaintiff was not arrested or otherwise taken into custody in connection with the child protective proceedings.  Nor would she have been arrested or taken into custody since, as mentioned above, child protective proceedings are civil in nature.  See, *Point I.A, supra.*

That they remained free from restraint on their physical liberty throughout the course of the child protective proceedings is another fatal barrier to their proving their §1983 malicious prosecution claim.  To establish a malicious prosecution claim, "a plaintiff must demonstrate 'a sufficient post-arraignment deprivation of liberty.' " *Li v. City of New York*, 246 F.Supp.3d 578 (E.D.N.Y. 2017).  In other words, "[o]ne of the requirements of a Section 1983 claim for malicious prosecution is that the plaintiff must have suffered a deprivation of his Fourth Amendment rights, *i.e.,* the plaintiff must have been seized in relation to the specific proceeding alleged to be malicious." *Callahan v. City of New York*, 90 F.Supp.3d 60, 71 (E.D.N.Y. 2015) citing *Emerson v. City of New York,* 740 F.Supp.2d 385, 392 (S.D.N.Y.2010).  See *McClenic v. Shmettan*, 15-CV-00705 (SJF)(SIL), 2016 WL 3920219, *7 (E.D.N.Y. July 15, 2016) citing

*Swartz v. Insogna*, 704 F.3d at 111-12 ("…to be actionable under §1983 there must be  post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures").   "No claim for malicious prosecution lies where the plaintiff was 'never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment.' " *Graham v. City of New York*, 869 F.Supp.2d 337, 356 (E.D.N.Y. 2012) quoting *Washington v. County of Rockland,* 373 F.3d 310, 316 (2d Cir. 2004).     Where, as here, a plaintiff does not assert that they were jailed or that their person was otherwise physically seized in connection with a Family Court proceeding, they have no §1983 malicious prosecution claim founded on that proceeding.  *Callahan v. City of New York*, 90 F.Supp.3d at 71 (E.D.N.Y. 2015) citing *Emerson v. City of New York,* 740 F.Supp.2d at 392 (S.D.N.Y.2010).  See*v. City of New York*, 1:09-cv-4577 (ERK)(MDG), 2016 WL 3976657, *7 (E.D.N.Y. July 22, 2016)(impairment of family integrity due to child protective proceedings  "is not the liberty of movement-physical freedom-that the Fourth Amendment protects").

Based on the response to the County's pre-motion request, we anticipate that the plaintiff will claim that as a result of the neglect proceedings the plaintiff was "deprived of the custody of her children for over two years" and that this depravation would give rise to a claim for malicious prosecution. (See DE 33 citing *Yuan v. Rivera*, 48 F.Supp.2d 335).   This argument is meritless as the custody status of her children was pursuant to an order of the Nassau Supreme Court in conjunction with the on-going matrimonial action in that County.  Indeed in his June 21, 2018 Order on plaintiff's motion to vacate the Temporary Order of Protection issued against her and dismiss the Neglect petition, Judge Cheng acknowledges this fact and further notes that neither the County or the Law Guardian were seeking removal of the children from either party and that the Court was not determining custody between the two parties.  (See Exhibit A, Order dated June 21, 2018 at *4).

13

Moreover, even if there was a "removal" based upon the issuance by the Family Court of an ex parte Temporary Order of Protection against the plaintiff, this did not constitute the violation of a constitutionally protected interest. "Parents have a 'substantive right under the Due Process Clause to remain together with their children without the coercive interference of the awesome power of the state.' " *Southerland v. City of New York*, 680 F.3d 127,  at 142 (quoting <u>*Tenenbaum v. Williams*</u>, 193 F.3d 581, 600 (2d Cir. 1999)  'While a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the 'fact of the removal' itself.' " <u>Id.</u>   To establish a substantive due process violation based on the removal of children from the home, "a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Mortimer v. City of N.Y.*, No. 15-CV-7186, 2018 WL 1605982, at *14 (S.D.N.Y. Mar. 29, 2018) (quoting *Southerland*, 680 F.3d at 151).

There is no violation of a parent's constitutionally protected interests where a caseworker "has a reasonable basis for thinking that the child is abused or neglected." *Southerland*, 680 F.3d at 152. The reasonable basis standard reflects the "need for unusual deference" to those who investigate allegations of child abuse or neglect. *Id.*   A temporary removal for several days does not affect a substantive due process violation where the purpose is to keep the child safe. *Id.* at 152-53.   Of critical significance, once a "court confirmation of the basis for removal is obtained, any liability for the continuation of the allegedly wrongful separation of parent and child can no longer be attributed to the officer who removed the child." *Hagans v. Nassau Cty. Dep't of Soc. Servs.*,  2020 WL 1550577, at *5 (E.D.N.Y. 2020).

In the instant matter an emergency hearing pursuant to New York FCA § 1029 was held on January 17, 2018 and the Court issued an *ex parte*  Temporary Order of Protection against the plaintiff.  On January 31, 2018, the plaintiff was present in court and objected to the TOP.  The

Court then held a hearing on February 20, 2018 and March 6, 2018 and upon conclusion modified the TOP to permit unsupervised visitation of the children by the plaintiff, essentially restoring the custody status quo determined by the Nassau Supreme Court. (See Exhibit A).  As noted above, there was no removal of the children.   Even if a "removal" can be construed, the basis for the "removal" was confirmed by Judge Cheng on January 17, 2018 and thereafter on January 31, 2018 and March 6, 2018. Plaintiff did not suffer a violation of a constitutionally protected interest.

To the extent that the plaintiff claims a deprivation of her liberty based on the requirement that she attend court for the Neglect proceeding, it should be noted that the Neglect petition filed against her was initiated by CPS Case Worker Jami Robertson, who is not a defendant in this lawsuit.

### *Probable Cause*

Plaintiff's malicious prosecution claim must also fail because there was probable cause to initiate the proceeding against her.   Among the basis for the allegations in the petition are statements made by the subject children to one of their teachers, Nicole Papa, that their mother beat them, and statements made directly to defendant Michele Clark that their mother hurt them bad and hit them.  The children also said that their mother gave them a brown medicine that made them feel sick.  The children made these statements on more than one occasion and the children cross-corroborated their allegations. (See Exhibit A - Neglect Petition dated January 23, 2018).   These statements alone were sufficient for a reasonable child protective worker to believe that there was reasonable basis to suspect abuse being perpetrated against them by the plaintiff.

### *Absolute Immunity*

An agency official "performing functions analogous to those of a prosecutor," such as

15

investigating a complaint and, thereafter, initiating a prosecution, has absolute immunity from liability in a § 1983 action for damages arising out of the initiation of the action and its subsequent prosecution. *Emerson v. City of New York*, 740 F. Supp.2d 385, at 392 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Butz v. Economou*, 438 U.S. 478, 514 (1978)). Indeed, "[t]he Second Circuit has specifically found that attorneys who pursue protective child litigation may be afforded absolute immunity as quasi-prosecutors." *Id.* (citing *Walden v. Wishengard*, 745 F.2d 149, 152 (2d Cir. 1984)). That absolute immunity may include an attorney's investigative work. *See Walden*, 745 F.2d at 152 (holding DDS attorney entitled to absolute immunity because her duties of investigating allegations of child abuse and initiating child protective actions are similar to those of a prosecutor acting as the State's advocate in a criminal matter). Relatedly, in New York, the Family Court Act authorizes child protective agencies, such as CPS, to originate child protective proceedings. *See Matter of Diane B.*, 96 Misc.2d at 800 (citing Family Ct. Act § 1032).

To the extent that the plaintiff claims that CPS worker Clark initiated the Neglect proceedings without first conducting an adequate investigation, or without probable cause, the argument is unavailing. "The decision whether to bring charges—and even the decision to bring charges in the absence of adequate evidence—falls squarely within a prosecutor's role as advocate and, therefore, is protected by absolute immunity." *Bryne v. City of N.Y.*, 736 F. App'x 263, 265 (2d Cir. 2018)(affirming the granting of absolute immunity to prosecutor as against plaintiff's claim the prosecutor "brought charges . . . without first conducting an adequate investigation"). Since, in this instance, and as authorized by § 1032 of the Family Court Act, Clark (or Robinson who actually brought the petition)  was acting in a quasi-prosecutorial role by presenting the petitions to originate the protective proceedings, which by their nature are designed to advocate on behalf of the children, *see id.* (instructing courts to "focus on

16

the nature of the function performed, not the identity of the actor who performed it")(quoting *Bernard v. County of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004)); *see also Matter of Diane B.*, 96 Misc.2d at 800 (stating that the purpose of a child protective proceedings is "to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being" (quoting Family Ct. Act § 1011),  Clark was acting in a quasi-prosecutorial manner and is, therefore, entitled to absolute immunity from plaintiffs' § 1983 claims. *See, Estate of Keenan v. Hoffman-Rosenfeld*, No. 2019 WL 3416374, at *20 (E.D.N.Y. July 29, 2019), <u>aff'd,</u> No. 19-2730-CV, 2020 WL 6494881 (2d Cir. Nov. 5, 2020);  *Robertson v. Allen*, 2016 WL 205381, at *9–10 (N.D.N.Y. Jan. 15, 2016).     This immunity would also extend to the supervisory defendants Heepe and Leto and the remaining CPS defendants.[2]     Further, as he was the attorney who pursued the protective child litigation, Assistant County Attorney Randall Ratje must be afforded absolute immunity as well, including purported investigative work.[3] *Emerson at 392*  (citing *Walden v. Wishengard*, 745 F.2d 149, 152 (2d Cir. 1984).

### *Qualified Immunity*

Even if Clark did not qualify for absolute immunity, she is entitled to qualified immunity.  A defendant is protected by the qualified immunity defense in a Section 1983 case if "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Estate of Keenan v. Hoffman-Rosenfeld*,   2020 WL 6494881, at *2 (2d Cir. Nov. 5, 2020) *citing Wilkinson v. Russell*, 182 F.3d 89, 103 (2d Cir. 1999). In cases arising from investigations of child abuse,

---

[2] The claims against defendants Heepe, Leto,  Lantz, Estarada, Sobosto and Montegue must also be dismissed as they fail to plead their personal involvement in the alleged constitutional violations as they relate to the plaintiff's neglect proceedings.   It is well settled that "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under§ 1983." *Back v. Hastings on Hudson Union Free School Dist*., 365 F.3d 107, 122 (2d Cir. 2004).

[3] The complaint labeling some of Ratje conduct as "investigative"  does not remove the absolute immunity protection as the Courts apply a functional approach to an immunity determination.  *Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995).

17

"courts must apply the 'reasonable basis' test to permit investigators considerable discretion in the abuse context." *Wilkinson*, 182 F.3d at 106. An investigation passes constitutional muster if investigators have a "reasonable basis" for their findings of abuse. *Id.*; *van Emrik v. Chemung Cty. Dep't of Soc. Servs.*, 911 F.2d 863, 866 (2d Cir. 1990). "[C]ourts must be especially sensitive to the pressurized circumstances routinely confronting case workers, circumstances in which decisions between difficult alternatives often need to be made on the basis of limited or conflicting information." *Wilkinson*, 182 F.3d at 105; *see also van Emrik*, 911 F.2d at 866.

In this case, a reasonable factfinder could only conclude that the County Defendants were confronted with "difficult alternatives," and that a reasonable basis existed for them to initiate abuse proceedings.   As noted above, the defendants were presented with evidence of abuse directly from the victim children on more than one occasion as well as evidence of admissions to their teacher.   While there may have been prior conflicting information from the children, the statements of actual abuse were made subsequent to those denials and on more than one date. Under these circumstances, the defendants were at least arguably required by law to report a reasonable suspicion of abuse. *See* N.Y. Soc. Serv. Law § 420.  *Keenan v. Hoffman-Rosenfeld*  at *2.  Accordingly, the County defendants are entitled to qualified immunity on all the claims against them.

## POINT III

## THE COMPLAINT FAILS TO ESTABLISH THE ELEMENTS OF
## A §1983 ABUSE OF PROCESS CLAIM

The plaintiff also bring a claim of abuse of process relating to the Neglect proceedings against her.   Under both New York and federal law, "a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in

order to obtain a collateral objective that is outside the legitimate ends of the process." *Slater v. Mackey*, 2015 WL 6971793, *10 ( E.D. N.Y. Nov. 10, 2015) quoting *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994). "[T]he gist of abuse of process is the improper use of process after it is regularly issued." *Id.* Accordingly, to succeed on an abuse of process claim, a plaintiff must not only show a collateral objective, but must show that that objective was pursued after legal process was issued. *Slater*, at 10 quoting *Richardson v. N.Y.C. Health & Hosps. Corp.,* No. 05–CV–6278 (RJS), 2009 WL 804096, at *16–17 (S.D.N.Y. Mar.25, 2009).

In the complaint, the plaintiff asserts the "collateral objective" sought by the CPS defendants in bringing the neglect petition against Zubko, was to "curry favor" with the local police departments by protecting the rights and interests of Valva, who was a New York City police officer. (See DE 1 at paragraph 322)   This claim is simply baseless.  First, the allegations are threadbare and wholly unsupported by any facts.  Such conclusory statements are insufficient to state a plausible claim.  See, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Additionally, the theory that a finding of neglect against the plaintiff would effect the rights of Valva in such a fashion that it would somehow then result in as yet unidentified local police officers showing undue favoritism to the individual CPS workers is beyond speculative and stretches the bounds of logic. Accordingly, there is no claim for abuse of process.[4]

---

[4] Plaintiff also presents an equally meritless theory against co-defendant Curti based upon a letter introduced as evidence in her matrimonial proceedings. (See DE 1 at paragraph 321)   As noted in co-defendant Curti's Memorandum of Law in support of her motion to dismiss, this letter was clearly determined to be a forgery by the Nassau Supreme Court Judge presiding over the action.  Plaintiff, having been present, is well aware of this determination and the fraudulent nature of the letter.  To now present an argument to this Honorable Court based upon what the plaintiff knows is an inauthentic document borders on frivolous.  While the Court must accept plaintiff's allegations as true for the purpose of a motion pursuant to FRCP 12(b)(6), the Court need not entertain allegations which the plaintiff knows to be false. County defendants raise this as the plaintiff has alleged various levels of conspiracy among the several classes of defendants.

## _Denial of a Fair Trial_

Plaintiff's claim for a denial of a fair trial fares no better as she did not suffer a deprivation of liberty.   To state a claim for the denial of the right to a fair trial a plaintiff must prove that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." _Jovanovic v. City of New York_, 486 Fed.Appx. 149, 152 (2d Cir. 2012)  Therefore, to have a cognizable claim for the denial of the right to a fair trial, a plaintiff must establish a causal connection between the fabricated evidence and her claimed deprivation of liberty. _See Zahrey v. Coffey_, 221 F.3d 342, 348, 355 (2d Cir. 2000) ("The manufacture of false evidence, in and of itself ... does not impair anyone's liberty, and therefore does not impair anyone's constitutional right," and the "deprivation of liberty of which [plaintiff] complains [must] be shown to be the _result of [the defendant's] fabrication of evidence._" )  In other words, to show causation, "plaintiff must show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself," where "independent probable cause exists for the prosecution" in the first place. _Torres v. City of New York_,  2017 WL 4325822, at *5 (E.D.N.Y. 2017).

As noted above, the plaintiff has failed to establish that she suffered a deprivation of liberty at all as a result of the neglect petition filed against her. Accordingly, her claim for a denial of a fair trial must be dismissed.

## _Stigma Plus Claim_

In order to establish a fourteenth amendment due process "stigma plus" claim a plaintiff must show (1) the utterance of a statement "sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights. _Doe v. Dep't of Pub._

*Safety ex rel. Lee,* 271 F.3d 38, 47 (2d Cir.2001) (citing *Paul,* 424 U.S. at 701–02, 710–11, 96 S.Ct. 1155).    The state-imposed burden or alteration of status must be "*in addition* to the stigmatizing statement." *Id.*    Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process. *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

As discussed previously, in the instant matter the plaintiff was not subject to a material state imposed burden or a state- imposed alteration of her status or rights, as the custody determination regarding her children had already been made by the Nassau County Supreme Court.   Therefore, her fourteenth amendment "stigma-plus" claim must be dismissed.

### *Conspiracy*

Since plaintiff states no claim for a violation of any constitutional right, she has no §1983 conspiracy claim. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).

### POINT IV

### THE CLAIMS AGAINST THE COUNTY OF SUFFOLK MUST BE DISMISSED AS THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE AN UNDERLYING VIOLATION OF THE PLAINTIFF'S CONSTITUTIONAL RIGHTS

The complaint filed by the plaintiff also contains a <u>Monell</u> claim against the County of Suffolk alleging that an official County policy or custom caused a violation of the plaintiffs' constitutional rights.    *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018(1978). However, as already explained, since there are no viable underlying constitutional violations in the first place, the claims against the County must be dismissed.

It is well settled that a municipality cannot be held liable in damages in an action brought pursuant to 42 U.S.C. 1983 when there is no underlying violation of the plaintiff's constitutional rights.  *see City of Los Angeles v. Heller*, 475 U.S. 796 (1986).   As noted above, the complaint

fails to allege any viable constitutional claims against  the individual defendants.  Without a viable claim establishing a violation of the plaintiff's constitutional rights in the first instance there can be no claim for municipal liability.

Additionally, while the plaintiff asserts that the actions of the individual defendants were the result of the County's failure to adequately train the several CPS defendants, plaintiff fails to plead any facts to establish the claimed deficiency in training (other than the bald claim that they were not trained), or that any County policy maker was deliberately indifferent to a known pattern of constitutional violations which would require more or better training.  *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440–41 (2d Cir. 2009).

## POINT V

### PLAINTIFF'S PENDANT STATE CLAIMS MUST BE DISMISSED FOR FAILING TO COMPLY WITH THE REQUIRMENTS OF GEN. MUN. LAW § 50 AND ON THE MERITS

Plaintiff's pendant New York State claims must also be dismissed as she failed to comply with the requirements of New York State General Municipal Law § 50h.  Under New York law, "a plaintiff must file a notice of claim before suing municipal defendants in a personal injury action." *Rentas v. Ruffin*, 816 F.3d 214, 226–27 (2d Cir. 2016).   "The notice of claim must set forth, *inter alia*, the nature of the claim, and must be filed within ninety days of when the claim arises." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). Additionally, General Municipal Law § 50-e 3(a)  establish the proper method of service of a Notice of Claim stating:

> 3..   How served;  when service by mail complete;  defect in manner of service;  return of notice improperly served.
>
> (a)  The notice shall be served on the public corporation against which the claim is made by delivering a copy thereof personally, or by registered or

> certified mail, to the person designated by law as one to whom a summons in an action in the supreme court issued against such corporation may be delivered, or to an attorney regularly engaged in representing such public corporation or, in a city with a population of over one million, by electronic means in a form and manner prescribed by such city.

In Suffolk County the attorney regularly engaged in representing the municipal corporation is the Office of the Suffolk County Attorney.  In the instant matter the plaintiff failed to timely serve a Notice of Claim upon the Office of the County Attorney.  As evidenced by the attached Exhibit B, which is the USPS Priority Mail envelope in which the Notice of Claim was ultimately received, the plaintiff served the Notice on the Suffolk County District Attorney, which does not comply with the requirements of the statute. Additionally, the statute requires service by registered or certified mail.   Service by priority mail also fails to comply with the statute. See *Negron v. State of New York*, 257 A.D.2d 652.  As plaintiff failed to comply with the statutory pre-requisite of filing a Notice of Claim prior to suit, the pendant State claims must be dismissed.

Further upon dismissal of the federal question claim, the Court may also dismiss the pendent state court claim based upon a lack of jurisdiction. 28 U.S.C. § 1367(c)(3).  If the Court does not dismiss the pendent state court claims on a procedural basis, the plaintiff's state claims should be dismissed as having no substantive legal merit.

In any claim based upon negligence, one of the essential elements that must be established by the plaintiff is the existence of a duty owed by the defendant to the plaintiff.  In *Lauer v. City of New York*, 95 N.Y.2d 95, 733 N.E.2d 184, 711 N.Y.S.2d 112 (2000), the New York Court of Appeals discussed the duty that can be created in a municipal liability case:

> A line must be drawn between competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit.  It is always tempting, especially where symmetry and sympathy would so seem to be best served, to impose new duties, and, concomitantly, liabilities, regardless of the economic and social burden.  But,

> absent legislative intervention, the fixing of the "orbit" of duty, as here, in the end
> is the responsibility of the courts.

Id. at 117 (*quoting DeAngelis v. Lutheran Medical Center*, 58 N.Y.2d 1053, 1055, 449 N.E.2d

406, 462 N.Y.S.2d 626). Thus, the majority of the New York Court of Appeals concluded that

"[w]ithout a duty running directly to the injured person there can be no liability in damages,

however careless the conduct or foreseeable the harm." *Id.* at 115.

In *Apostolakis v. Centereach Fire District*, 300 A.D.2d 516, 752 N.Y.S.2d 691 (2d Dep't

2002), the Second Department of the New York Appellate Division set forth certain well

recognized propositions concerning municipal liability in providing governmental services: "As

a general rule, a public entity is immune from negligence claims arising from the performance of

its governmental functions, unless the plaintiff can establish that a special relationship existed

between the injured party and the public entity which would create a special duty of protection of

the injured party." *Id*. at 692.

It has been determined that where there is no evidence that the decedent justifiably relied

on the statements of a municipal defendant so as to lull the decedent into a false sense of

security, there is no basis to sustain a claim based upon an alleged special duty. *Id.* at 693.

Certainly, it cannot be said that the plaintiff (even if she was the focus of the inquiry rather than

the children) relied on the defendants in a manner that resulted in the actual harm to her son. To

the contrary, according to the complaint, the plaintiff was not satisfied with the conduct of the

Suffolk defendants and felt that her children were not secure or safe from harm.

Additionally, the plaintiff has not alleged elements to sustain a claimed special duty that

is owed by the County: thus, there is no actionable state tort action that can be maintained

against the County.

24

The elements of "special duty" were set forth by the New York Court of Appeals in *Cuffy v. City of New York*, 69 N.Y.2d 255, 505 N.E.2d 937, 513 N.Y.S.2d 372 (1987):

> (1)   an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of a party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

Id. at 260, 505 N.E.2d 940, 513 N.Y.S.2d 375.  The complaint fails to establish any duty to act on behalf of the party that was injured, or direct contact between the defendants and the victim, Thomas Valva.  Without establishing these four elements of "special duty", the plaintiff's common law claim against the County of Suffolk must be dismissed.

Lastly, the Suffolk defendants are entitled to absolute immunity. "New York law provides absolute immunity for state and local employees when they perform discretionary, as opposed to ministerial, functions[,] . . .[which] protection extends to the state itself as well as its subdivisions." *Tenenbaum*, 193 F.3d at 606 (citing *Tango v. Tulevech*, 61 N.Y.2d 34, 40 (1983); *Arteaga v. State*, 72 N.Y.2d 212, 216 (1988). "'[D]iscretionary acts a[re] those which 'involve the exercise of reasoned judgment which could typically produce different acceptable results.'" *Tenenbaum v. Williams*, 862 F. Supp. 962, 981 (E.D.N.Y. 1994)(quoting *Tango*, 61 N.Y.2d at 41), *aff'd in part, vacated in part*, 193 F.3d 581 (2d Cir. 1999). Based on the alegations in the complaint there is not dispute that the CPS workers were performing discretionary acts in commencing the Neglect proceedings; therefore, the County Defendants would be absolutely immune to liability on Plaintiffs' state-law claims which  arise out of those acts. *See V.S. v. Muhammad,* 595 F.3d at 432 (holding child protective services caseworkers entitled to absolute immunity for claims of malicious prosecution and abuse of process under New York State law); *see also Tenenbaum*, 193 F.3d at 606 (affirming district court's finding that Child Welfare Association workers' actions of removing child from school and having her medically examined

for signs of sexual abuse were discretionary, entitling workers to absolute immunity from plaintiffs' state-law claims arising from those actions).

**CONCLUSION**

Based upon the foregoing, the Suffolk County defendants respectfully submit that the Court should grant this motion pursuant to Rule 12(b)(6) for an order dismissing the complaint for failure to state a claim upon which relief can be granted.

Dated:   Hauppauge, New York
        December 18, 2020

                        Dennis M. Cohen
                        Suffolk County Attorney
                        Attorney for Suffolk County Defendants
                        100 Veterans Memorial Highway
                        P.O. Box 6100
                        Hauppauge, New York 11788

By:    */s/ Brian C. Mitchell*
                        Brian C. Mitchell
                        Assistant County Attorney