UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JUSTYNA ZUBKO-VALVA, as Mother
and Natural Guardian of ANTHONY
VALVA and ANDREW VALVA, and as
Administratrix of the Estate of THOMAS
VALVA, and JUSTYNA ZUBKO-VALVA
Individually,

                                        Plaintiffs,

          – against –

THE COUNTY OF SUFFOLK, CPS
SENIOR CASEWORKER MICHELE
CLARK, Individually and in her Official
Capacity, CPS SUPERVISOR EDWARD
HEEPE, Individually and in his Official
Capacity, CPS ASSISTANT DIRECTOR
ROBERT LETO, Individually and in his
Official Capacity, CPS INVESTIGATOR
JENNIFER LANTZ, Individually and in
her Official Capacity CPS
INVESTIGATOR MELISSA ESTRADA,
Individually and in her Official Capacity,
CPS INVESTIGATOR LYDIA SABOSTO,
Individually and in her Official Capacity,
CPS SUPERVISOR JEAN MONTAGUE,
Individually and in her Official Capacity,
DEPARTMENT OF SOCIAL SERVICES
COUNTY ATTORNEY RANDALL
RATJE, ESQ., Individually and in his
Official Capacity, ATTORNEY FOR
CHILDREN DONNA MCCABE, ESQ.,
Individually and in her Official Capacity,
THE LAW OFFICE OF DONNA
MCCABE, SHANA CURTI, ESQ.,
Individually and in her Official Capacity,
ORSETTI & CURTI PLLC, EAST
MORICHES UNION FREE SCHOOL

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

2:20-cv-2663 (ERK)(ARL)

1

DISTRICT, PRINCIPAL EDWARD
SCHNEYER, Individually and in his
Official Capacity, SCHOOL
SUPERINTENDENT CHARLES RUSSO,
Individually and in his Official Capacity,
HOPE SCHWARTZ ZIMMERMAN,
Individually, ATTORNEY FOR
CHILDREN ETHAN HALPERN, ESQ,
Individually and in his Official Capacity,
THE LEGAL AID SOCIETY OF
SUFFOLK COUNTY, INC.,
CHILDREN'S LAW BUREAU,
MICHAEL VALVA, and ANGELA
POLLINA.

                              Defendants.

_____

KORMAN, *J.*:

On January 17, 2020, eight-year-old Thomas Valva ("Tommy") froze to death

after his father Michael Valva and his father's girlfriend Angela Pollina locked him

in the garage overnight. ECF No. 1 ¶ 263. Tommy's mother Plaintiff Justyna Zubko-

Valva (Mrs. Valva) has filed a complaint against Mr. Valva, Ms. Pollina, Tommy's

school, and numerous other private and government defendants for the roles they

played in Tommy's death, as well as Mr. Valva and Ms. Pollina's abuse of her two

other children—Anthony and Andrew. Pending is a motion to dismiss this complaint

brought by East Moriches Union Free School District, Principal Edward Schneyer,

and School Superintendent Charles Russo (collectively, the "School Defendants").[1] The factual background of this case is discussed extensively in my opinion resolving the motion to dismiss brought by Suffolk County and the Defendants associated with Child Protective Services (the "CPS Defendants"). *See Zubko-Valva v. County of Suffolk*, 2022 WL 2161193 (E.D.N.Y. June 15, 2022). Thus, the discussion of the facts is limited here to those relevant to Mrs. Valva's case against the School Defendants.

## FACTUAL BACKGROUND

Mr. Valva was awarded temporary custody of Tommy, Anthony, and Andrew in September 2017. ECF No. 1 ¶ 75; ECF No. 64-8 at 9–22. The complaint alleges that, beginning in September 2017 until Tommy's death in 2020, Mrs. Valva provided the school with documentary evidence of abuse—including audio recordings, photographic evidence, and medical evidence. *Id.* ¶¶ 213–14. Mrs. Valva was so worried about the children that she emailed the school's principal that the children were in "enormous danger of losing their lives by Michael Valva and [Angela] Pollina." *Id.* ¶¶ 216, 262 (emphasis omitted). In January 2018, Mrs. Valva alleges that "the School Defendants saw clear, irrefutable proof that Tommy had been physically beaten and abused by [Mr.] Valva, with severe bruising in his lower

---

[1] I address the other Defendants' motions in two additional memoranda that have been filed separately.

spine and buttocks area." *Id.* ¶ 225. Yet the School Defendants did not begin to report their suspicions that Mr. Valva was abusing the boys until September 2018, a full year after the children were placed in their father's custody and nine months after Tommy was beaten. *Id.* ¶ 226. The complaint alleges that the School Defendants purposefully hid the fact that Mr. Valva was abusing the children during this one-year period and failed to instruct the children's teachers to report the abuse. *Id.* ¶ 227.

Renee Emin, the school's psychologist, filed the first report of abuse with CPS on September 27, 2018. ECF No. 63-2 at 1–2. The report noted that Anthony and Tommy were "very thin and always hungry." *Id.* at 2. Indeed, Anthony had lost 20 pounds in one year. *Id.* The boys also began wearing pull-up diapers to school despite their age. *Id.* Tommy, who had never previously had any toileting issues, began having accidents in school. *Id.* Tommy also told school psychologist Ms. Emin that Mr. Valva and Ms. Pollina left the children at home alone and did not return until it was dark. *Id.*

In another complaint to CPS dated January 16, 2019, the school's principal, defendant Edward Schneyer, reported that Tommy came into school with a "suspicious bruise" and "swollen right eye that was not there . . . the day before." *Id.* at 4–5. Tommy gave conflicting stories about how and when the injury occurred. *Id.* at 5. The report also stated that Anthony began screaming in class when he was asked

to see the nurse for a stye that was bothering him because Mr. Valva had told him that he was not allowed to go to the nurse. *Id.*

On February 27, 2019, principal Scheyner and Anthony's teacher, Jenna Holborrow, filed another complaint with CPS. *Id*. at 6–7. The report reiterated concerns about Anthony's weight loss. *Id.* at 7. It also stated that Anthony came to school late earlier that month because he had had an accident at home. *Id.* Then, on February 25, 2019, "Anthony arrived at school with a wet jacket and backpack that smelled of urine." *Id.* Two days later, Anthony came to school with urine-soaked pants, socks, and shoes. *Id.* He was shivering and told his teacher that he had to stay in his garage for an unknown amount of time. *Id.*

Principal Schneyer, Ms. Holborrow, and two other teachers filed four reports in March 2019 describing troubling behavior from Anthony. ECF No. 63-3 at 1–8. The change in behavior began shortly after Mr. Valva requested that Anthony be placed at a residential school. *Id.* at 8. The school district rejected Mr. Valva's request, and after the district's decision was made known to Mr. Valva, Anthony began refusing to get off the bus. *Id.* Anthony told his teachers that Mr. Valva and Ms. Pollina instructed him to not get off the bus and that they would reward him with Chuck-E-Cheese if he kicked and screamed. *Id.* Principal Schneyer believed that Anthony was being coached to misbehave. *Id.* One day, after Anthony's teachers coaxed him off the bus, he told them that he did not have breakfast that morning because he was "on the mattress." *Id.* at 6. He clarified that the mattress was in the

garage and, when he was in the garage, he was alone and cold. *Id.* at 4, 6. Anthony said that he was not allowed to go to his room and had to stay in the garage "for weeks and days" because he had a toileting accident. *Id.* at 4. He told his teachers that he was not allowed to talk about the garage. *Id.*

On May 14, 2019, another teacher, Michelle Cagliano, filed a report with CPS. *Id.* at 9–11. Ms. Cagliano noticed that when Tommy arrived at school the prior morning, he had a "raised, bruised bump on the upper part of his forehead." *Id.* at 11. After initially being evasive, Tommy admitted that the bruise was the result of his father throwing his backpack at him. *Id.* The next day Tommy approached Ms. Cagliano and told her that his hand hurt. *Id.* Tommy admitted that Mr. Valva had squeezed his hand because Tommy urinated himself. *Id.* He declined to go to the nurse. *Id.*

Teacher Holborrow filed another report with CPS on June 7, 2019. *Id.* at 12–13. Ms. Holborrow noticed that when Anthony arrived at school that morning "his nose had several bright red abrasions, caked blood in both nostrils," and swelling at the bridge. *Id.* at 13. After his teachers suggested that he go to the nurse, Anthony screamed. *Id.* The teachers then called Mr. Valva who reported that Anthony had woken up with a bloody nose. *Id.* When asked about the abrasions, Mr. Valva repeated that Anthony had woken up with a bloody nose and evaded further details. *Id.* The teachers asked Mr. Valva and Ms. Pollina to tell Anthony that he was allowed to go to the nurse. *Id.* Ms. Pollina got on the phone with Anthony and told him to go

to the bathroom and clean his nose himself, but that he could go to the nurse if it kept bleeding. *Id.* As the morning went on, Anthony's nose continued to swell and bruise. *Id.* Ms. Holborrow also noticed faint red lines on the back side of Anthony's wrists. *Id.*

On November 19, 2019, less than two months before Tommy's death, two more teachers filed a complaint with CPS. *Id.* at 14–17. The teachers noted that they had called CPS numerous times about how Mr. Valva and Ms. Pollina were treating Tommy and Anthony. *Id.* at 15. The report noted that Anthony had arrived at school with a cut next to his eye and a bruise on the tip of his ear. *Id.* Tommy had a laceration on his forehead. *Id.* The boys claimed that they had gotten hurt playing football. *Id.* The teachers emailed (and the principal called) Mr. Valva to inquire about the boys' injuries. *Id.* Mr. Valva claimed that the boys were hurt playing football, but his "story changed multiple times" and Tommy and Anthony "were visibly uncomfortable when speaking about how their faces were injured." *Id.* The report also expressed concern that the boys were malnourished and noted that Anthony and Tommy were "always asking for more food, trying to sneak food, hide food, and eat every last crumb and morsel of food given to them." *Id.* The teachers observed that Anthony and Tommy always had less food in their lunchbox than their younger (non-autistic) brother, Andrew. *Id.* Indeed, the complaint alleges that, in November 2018, Andrew had a Body Mass Index of 15, whereas Tommy and Anthony had Body Mass Indexes of 1.32 and .57 respectively. ECF No. 1 ¶ 239.

Despite the reports discussed above, Mrs. Valva alleges that the School Defendants "allowed the abuse, torture and starvation of the children to continue unabated, and get worse and worse over time." *Id.* ¶ 240. She claims that, in an effort to protect her children, Mrs. Valva repeatedly tried to arrange visits at the school in the presence of their teachers. *Id.* ¶ 241. Nevertheless, Mrs. Valva alleges that her efforts to meet with her children at the school were repeatedly rebuffed by principal Schneyer and school superintendent Charles Russo, even after she showed them a March 6, 2018 court order expressly permitting her to have unsupervised visitation with her children without any restrictions. *Id.* ¶¶ 242–43.

## DISCUSSION

This opinion resolves the motion to dismiss brought by the School Defendants. In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint is construed liberally, all factual allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition to the facts alleged in the complaint, a court may consider documents incorporated by reference. *Chamberlain v. City of White Plains*, 960 F.3d 100, 105 (2d Cir. 2020).

## I.    Federal Claims

Mrs. Valva brings numerous causes of action claiming that the School Defendants violated her constitutional rights under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege: (1) "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," (2) by a person acting under the color of state law. 42 U.S.C. § 1983; *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

### A.   *"Deliberate Indifference" in Violation of Due Process*

Mrs. Valva claims that the School Defendants violated her right to substantive due process under the Fourteenth Amendment by failing to take action to protect her children from Mr. Valva and Ms. Pollina. There are two exceptions to the general rule that the state is not required under the Due Process Clause to protect its citizens' rights from invasion by private actors: The state may owe a constitutional duty to a victim of private violence if (1) "the state ha[s] a special relationship with the victim" or (2) the state or "its agents in some way [] assisted in creating or increasing the danger to the victim." *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008) (quotation marks omitted). Thus, to state a deliberate indifference claim against the School Defendants, Mrs. Valva must either show that the School Defendants had a special relationship with her children or that the School Defendants' actions somehow increased the danger Mr. Valva and Ms. Pollina posed to her children.

Mrs. Valva argues that the School Defendants had a special relationship with her children because school attendance was compulsory. ECF No. 68 at 10. Mrs. Valva and the School Defendants spill much ink arguing whether compulsory school attendance can ever create a duty to protect students from violence initiated by private actors. As both parties recognize, although the Second Circuit has not addressed the issue, the significant weight of authority—both in this circuit and in others—suggests that compulsory school attendance does not impose on public schools a duty to protect students from the acts of private parties. *See* Memorandum and Order, *P. T. v. W. Hempstead Union Free Sch. Dist.*, 17-cv-4910, (E.D.N.Y. Feb. 26, 2021), ECF No. 39 at 10–11 & n.5 (collecting cases). In any event, whether compulsory school attendance creates a special relationship giving schools the duty to protect their students is irrelevant to this case because "involuntary custody [is] the linchpin of any special relationship exception." *Matican*, 524 F.3d at 156. Here, the complaint alleges that the abuse the children suffered occurred at their father's house, not while they were involuntarily at school. Thus, the special relationship exception is inapplicable in this case. *Id.*

Even though a special relationship did not exist between the School Defendants and the children, Mrs. Valva can still state a deliberate indifference claim against the School Defendants if their actions increased the threat of danger Mr. Valva and Ms. Pollina posed to her children. Mrs. Valva points to her allegations that "the School Defendants hid the truth about the children's health and fabricated false,

misleading and dishonest reports about her children" and that School defendants Schneyer and Russo fabricated excuses to prevent Mrs. Valva from visiting her children at school. ECF No. 1 ¶¶ 218, 241–44. Yet, Mrs. Valva does not allege that Mr. Valva or Ms. Pollina were aware that the School Defendants were hiding the truth about the children's poor health and preventing Mrs. Valva from visiting her children at school. Thus, Mrs. Valva cannot show that the School Defendants' conduct "conveyed to [Mr. Valva and Ms. Pollina] that [they] could continue to engage in" child abuse and thereby increased the threat of danger Mr. Valva and Ms. Pollina posed to the children. *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 430–31 (2d Cir. 2009).

As Mrs. Valva has not adequately alleged that the School Defendants either had a special relationship with her children or increased the threat Mr. Valva and Ms. Pollina posed to her children, she cannot state a deliberate indifference claim against the School Defendants. The motion to dismiss the deliberate indifference claim is granted.

### B. *Denial of the Right to a Fair Trial*

Mrs. Valva generally alleges that the School Defendants violated her right to a fair trial by misrepresenting and falsifying evidence about her and her children to CPS. ECF No. 1 ¶¶ 314–17. A § 1983 "fair trial" claim is, in fact, a misnomer since a plaintiff may still bring such a claim even if she prevails in the proceeding at issue. *See Frost v. New York City Police Dep't*, 980 F.3d 231, 249–50 (2d Cir. 2020).

11

Indeed, "a criminal defendant's right to a fair trial protects more than the fairness of the trial itself[;] . . . the (perhaps imprecisely named) fair trial right protects against [any and all] deprivation[s] of liberty that result[] when a police officer fabricates and forwards evidence to a prosecutor that would be likely to influence a jury's decision, *were that evidence presented to the jury.*" *Id.* (italics in original). To prove a violation of her right to a fair trial, a plaintiff must show that "an (1) investigating official (2) fabricate[d] information (3) that [wa]s likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

Mrs. Valva does not explain what evidence the School Defendants gave to CPS that was false nor does she specifically allege that this evidence was used against her in the neglect proceedings. *See* ECF No. 1 ¶¶ 142–75, 211–53. Since Mrs. Valva must show that the fabricated information the School Defendants forwarded to prosecutors resulted in "a deprivation of life, liberty, or property" to prove a violation of her right to a fair trial, Mrs. Valva has failed to state a claim that her right to a fair trial was denied by the School Defendants. *Garnett*, 838 F.3d at 279. The motion to dismiss this claim against the School Defendants is granted.

## C.  *Stigma Plus*

Mrs. Valva generally alleges that the School Defendants "misrepresented and falsified evidence" about Mrs. Valva and her children and "published these false

claims to various third parties, including but not limited to the Suffolk County Department of Social Services, Judge Zimmerman, Judge Lorintz, and Judge Cheng, and to other third parties involved in the matrimonial and family court proceedings."[2] ECF No. 1 ¶ 326. But Mrs. Valva fails to specifically allege that any of the School Defendants made statements that damaged her in the matrimonial or neglect proceedings. *See id.* ¶¶ 142–75, 211–53. Mrs. Valva has thus failed to state a stigma plus claim against the School Defendants. *See Mudge v. Zugalla*, 939 F.3d 72, 80 (2d Cir. 2019) ("To prevail on [] a stigma-plus claim, a plaintiff must demonstrate (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." (internal quotation marks omitted)). The motion to dismiss the stigma plus claim against the School Defendants is granted.

### D. *Malicious Prosecution*

Mrs. Valva brings a malicious prosecution claim against the School Defendants, alleging that they violated her Fourth Amendment rights by misrepresenting and falsifying evidence against her in the neglect and matrimonial proceedings. ECF No. 1 ¶¶ 301–12. But Mrs. Valva cannot state a malicious

---

[2] Judge Zimmerman transferred custody of the children from Mrs. Valva to Mr. Valva in the divorce proceeding. The divorce proceeding was then transferred to Judge Lorintz who stayed the proceedings pending the resolution of the neglect petition brought by Suffolk County against Mrs. Valva. Judge Cheng oversaw the neglect proceedings.

prosecution claim because she has not sufficiently alleged a Fourth Amendment seizure. *See Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010). Moreover, Mrs. Valva has not adequately alleged the School Defendants' involvement in the neglect or matrimonial proceedings. *See* ECF No. 1 ¶¶ 142–75, 211–53. The motion to dismiss the malicious prosecution claim is granted.

### E.  *Abuse of Process*

Mrs. Valva claims that the School Defendants committed malicious abuse of process under § 1983 by "issu[ing] legal process to remove [Mrs. Valva's] children from her custody, and subject[ing] [her] to an unlawful and utterly baseless Neglect Petition that was intended to permanently deprive [Mrs. Valva] of her parental rights over her children." *Id.* ¶ 320. This claim fails because this Circuit does not recognize a malicious abuse of civil process claim under § 1983. *See Green v. Mattingly*, 585 F.3d 97, 100 (2d Cir. 2009). Moreover, Mrs. Valva does not specifically allege that any of the School Defendants were involved in the proceedings that affected her custodial rights. *See* ECF No. 1 ¶¶ 142–75, 211–53. The motion to dismiss the abuse of process claim is granted.

### F.  *Conspiracy*

Mrs. Valva generally alleges that the School Defendants were involved in a conspiracy to violate her rights under § 1983, but she does not specifically allege that any of the School Defendants entered into an agreement with each other or with the other defendants to violate Mrs. Valva's constitutional rights. *See id.* These

conclusory allegations are insufficient to state a claim of conspiracy under § 1983. *See Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993). The motion to dismiss the conspiracy claim against the School Defendants is granted.

G. *Municipal Liability*

Mrs. Valva alleges that East Moriches Union Free School District, School Superintendent Charles Russo, and Principal Edward Schneyer violated her constitutional rights by failing to properly train School District employees on their duties as mandatory reporters to truthfully disclose to CPS all instances of suspected child abuse. ECF No. 1 ¶¶ 364–80. While "[m]unicipal liability may [] be premised on a failure to train employees," *Okin*, 577 F.3d at 440, a plaintiff must show that the failure to train "led to an independent constitutional violation," *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). As Mrs. Valva has not adequately pleaded that her constitutional rights were violated by any of the School Defendants, her municipal liability claim against the School District must fail.

Mrs. Valva argues that her claim against the School District can survive even if the claims against the individually named School Defendants are dismissed because "municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants." *Barrett v. Orange Cnty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999). But this is a limited exception that only applies where "the combined acts or omissions of several

employees acting under a governmental policy or custom" violate a plaintiff's constitutional rights. *Id.* (quotation marks omitted). Because Mrs. Valva has failed to specifically allege combined acts or omissions of school employees that rise to the level of a constitutional violation, she cannot state a municipal liability claim against the School District.

The motion to dismiss the municipal liability claim against the School District, superintendent Russo, and principal Schneyer is granted.

## II.   State Law Claims

Mrs. Valva brings New York state law claims against various School Defendants for wrongful death, conscious pain and suffering, intentional infliction of emotional distress ("IIED"), defamation, negligent hiring and training, negligence, violation of Social Services Law section 413, and breach of *loco parentis*. In deciding the motion to dismiss brought by Suffolk County and the CPS Defendants, I have maintained jurisdiction over certain federal law claims against Suffolk County and the CPS Defendants. *See Zubko-Valva*, 2022 WL 2161193, at *4–13. These claims arise from the "same case or controversy" as the state law claims against the School Defendants: the failure of public entities to intervene in the abuse of Mrs. Valva's children by Mr. Valva and Ms. Pollina that resulted in Tommy's death. 28 U.S.C. § 1367(a). I thus have supplemental jurisdiction over the state law claims against the School Defendants and decline to exercise my discretion to dismiss them. *See* 28 U.S.C. § 1367(c).

A. *Negligence and Violation of Social Services Law Section 413*

While the School Defendants did report their suspicions that Mrs. Valva's children were being abused to CPS starting in September 2018, this was a full year after Mr. Valva gained custody of the children in September 2017. ECF No. 1 ¶ 226. Mrs. Valva alleges that the School Defendants were negligent in failing to intervene to protect Mrs. Valva's children during this one-year period despite knowing that the children were being abused by Mr. Valva and Ms. Pollina. *Id.* ¶¶ 438–52.

To state a common-law claim for negligence against the School Defendants, Mrs. Valva must establish that the School Defendants owed Mrs. Valva a duty to intervene to protect Mrs. Valva's children from Mr. Valva and Ms. Pollina. *Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 490 (N.Y. 2016). "Schools are under a duty to adequately supervise the students in their charge," but this duty "is coextensive with and concomitant to its physical custody and control over the child" and typically does not extend beyond school grounds. *Kimberly S.M. by Mariann D.M. v. Bradford Cent. Sch.*, 649 N.Y.S.2d 588, 589–90 (N.Y. App. Div. 1996) (quotation marks omitted and alterations accepted).

In this case, Mrs. Valva does not allege that Mr. Valva and Ms. Pollina's abuse of her children occurred while the children were "in the custody and control of school officials" nor that "the threatened harm posed to [the children] . . . involve[d] foreseeable conduct that could occur while the child[ren] [were] in the custody and control of school officials." *Id.* at 590 (holding that a "teacher owed no common-law

17

duty to report [a] suspected case of child sexual abuse to anyone" when the sexual abuse occurred only outside of school grounds). Thus, Mrs. Valva cannot state a claim for negligence against the School Defendants.

Mrs. Valva argues that Social Services Law section 413(1)(a), which requires school officials "to report or cause a report to be made in accordance with this title when they have reasonable cause to suspect that a child . . . is an abused or maltreated child," imposes a duty on school officials to report abuse that occurs outside of school grounds. This may be the case, but Social Services Law section 420(2), which states that "[a]ny person . . . required by this title to report a case of suspected child abuse or maltreatment who knowingly and willingly fails to do so shall be civilly liable for the damages proximately caused by such [a] failure," provides the cause of action to enforce Social Services Law section 413(1)(a)—not a common-law negligence action. *See BL Doe 3 v. Female Acad. of Sacred Heart*, 158 N.Y.S.3d 474, 479–80 (N.Y. App. Div. 2021). As Mrs. Valva has adequately stated a claim against the School Defendants under Social Services Law section 420(2) for their violation of Social Services Law section 413(a) in failing to immediately report Mr. Valva and Ms. Pollina's abuse of her children, that claim will proceed instead of the common-law negligence claim. *See Kimberly S.M.*, 649 N.Y.S.2d at 589–92 (holding that a claim against a teacher for failure to report sexual abuse of a child that occurred off-campus could proceed under Social Services Law section 420(2) instead of as a violation of the teacher's common-law duty to report).

The motion to dismiss the negligence claim against the School Defendants is granted, but the motion to dismiss the claim for a violation of Social Services Law section 413 against these defendants is denied.

## B. *Wrongful Death*

Mrs. Valva alleges a wrongful death claim against the School Defendants on the basis that their actions and omissions directly caused Tommy's death. ECF No. 1 ¶ 383. The School Defendants argue that Mrs. Valva cannot state a wrongful death claim without a plausible negligence claim. But to state a claim for wrongful death under New York law, a plaintiff need only allege "a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. Ests. Powers & Trs. L. § 5-4.1(1). Since Mrs. Valva has sufficiently alleged that the School Defendants have committed wrongful acts other than negligence, including the violation of Social Services Law section 413, I deny the School Defendants' motion to dismiss the wrongful death claim.

## C. *Defamation*

Mrs. Valva generally alleges that the School Defendants "misrepresented and falsified evidence" about Mrs. Valva and her children and "published these false claims to various third parties, including but not limited to the Suffolk County Department of Social Services, Judge Zimmerman, Judge Lorintz[,] and Judge Cheng, and to other third parties involved in the matrimonial and family court

proceedings." ECF No. 1 ¶ 404. Under New York law, a defamation action must be "commenced within one year" of the event from which it arises. N.Y. Civ. Prac. L. & Rules § 215(3). All matrimonial and family court proceedings relevant to this case had concluded by April 12, 2019, *see* ECF No. 79 at 1, but Mrs. Valva did not file the complaint until June 16, 2020—more than a year later. Thus, Mrs. Valva's defamation claim is untimely. Furthermore, Mrs. Valva fails to specifically allege that any of the School Defendants made statements that damaged her in the matrimonial or neglect proceedings. *See* ECF No. 1 ¶¶ 142–75, 211–53. Thus, the motion to dismiss the defamation claim against the School Defendants is granted.

### D. Breach of Loco Parentis

Mrs. Valva alleges that the School Defendants "breached [their] duty to act *in loco parentis*" by "willfully ignoring the clear and persistent signs" that Mrs. Valva's children were being abused. *Id.* ¶¶ 500–14. "*[I]n loco parentis* defines the duty owed within the context of a negligence cause of action, but does not create an independent cause of action." *O'Reilly v. Archdiocese of New York*, 2021 WL 4706417, at *3 (N.Y. Sup. Ct. N.Y. Cnty. Oct. 8, 2021). Thus, Mrs. Valva cannot state a separate cause of action for breach of *in loco parentis* in addition to her negligence claim against the School Defendants. This claim is dismissed.

### E. *The Remaining State Law Claims*

Mrs. Valva also brings claims against the School Defendants for IIED and conscious pain and suffering, as well as a claim against the School District for

negligent hiring, training, and retention of its employees. ECF No. 1 ¶¶ 397–402, 421–29. Because these claims arise from the same factual predicates as the remaining state law claims against the School Defendants, it is unnecessary at this time to explore them at length. "[T]here seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the courts, but because of the mischance of differing dispositions of what is essentially a single controlling issue." *Audi Vision Inc. v. RCA Mfg. Co.*, 136 F.2d 621, 625 (2d Cir. 1943). Because the IIED, conscious pain and suffering, and negligent hiring and training claims are so integrally related to the wrongful death and violation of Social Services Law section 413(a) claims against the School Defendants, it does not currently make sense to grant a motion to dismiss these claims, "as it may prove necessary to hold yet another trial in the event that it is determined on appeal that the motion to dismiss was improperly granted." *Thibodeaux v. Travco Ins. Co.*, 2014 WL 354656, at *2 (E.D.N.Y. Jan. 31, 2014). Thus, the School Defendants' motion to dismiss is denied as to the IIED, conscious pain and suffering, and negligent hiring and training claims.

## CONCLUSION

The New York law claims for wrongful death, conscious pain and suffering, IIED, and violation of Social Services Law section 413 may proceed against the School Defendants. The New York law claim for negligent hiring, training, and

retention may proceed against East Moriches Union Free School District. The rest of the claims against the School Defendants are DISMISSED.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York                     Edward R. Korman
June 17, 2022                          United States District Judge