UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JUSTYNA ZUBKO-VALVA, as Mother
and Natural Guardian of ANTHONY
VALVA and ANDREW VALVA, and as
Administratrix of the Estate of THOMAS
VALVA, and JUSTYNA ZUBKO-VALVA
Individually,

                    Plaintiffs,

          – against –

THE COUNTY OF SUFFOLK, CPS
SENIOR CASEWORKER MICHELE
CLARK, Individually and in her Official
Capacity, CPS SUPERVISOR EDWARD
HEEPE, Individually and in his Official
Capacity, CPS ASSISTANT DIRECTOR
ROBERT LETO, Individually and in his
Official Capacity, CPS INVESTIGATOR
JENNIFER LANTZ, Individually and in
her Official Capacity CPS
INVESTIGATOR MELISSA ESTRADA,
Individually and in her Official Capacity,
CPS INVESTIGATOR LYDIA SABOSTO,
Individually and in her Official Capacity,
CPS SUPERVISOR JEAN MONTAGUE,
Individually and in her Official Capacity,
DEPARTMENT OF SOCIAL SERVICES
COUNTY ATTORNEY RANDALL
RATJE, ESQ., Individually and in his
Official Capacity, ATTORNEY FOR
CHILDREN DONNA MCCABE, ESQ.,
Individually and in her Official Capacity,
THE LAW OFFICE OF DONNA
MCCABE, SHANA CURTI, ESQ.,
Individually and in her Official Capacity,
ORSETTI & CURTI PLLC, EAST
MORICHES UNION FREE SCHOOL

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**

2:20-cv-2663 (ERK)(ARL)

1

DISTRICT, PRINCIPAL EDWARD
SCHNEYER, Individually and in his
Official Capacity, SCHOOL
SUPERINTENDENT CHARLES RUSSO,
Individually and in his Official Capacity,
HOPE SCHWARTZ ZIMMERMAN,
Individually, ATTORNEY FOR
CHILDREN ETHAN HALPERN, ESQ,
Individually and in his Official Capacity,
THE LEGAL AID SOCIETY OF
SUFFOLK COUNTY, INC.,
CHILDREN'S LAW BUREAU,
MICHAEL VALVA, and ANGELA
POLLINA.

Defendants.

_____

KORMAN, *J.*:

On January 17, 2020, eight-year-old Thomas Valva ("Tommy") froze to death

after his father Michael Valva and his father's girlfriend Angela Pollina locked him

in the garage overnight. ECF No. 1 ¶ 259.  Tommy's mother Plaintiff Justyna Zubko-

Valva (Mrs. Valva) has filed a complaint against Mr. Valva, Ms. Pollina, and

numerous other private and government defendants for the roles they played in

Tommy's death, as well as for Mr. Valva and Ms. Pollina's abuse of her two other

children—Anthony and Andrew. Pending are motions to dismiss this complaint

brought by (1) Donna McCabe and her law firm, who represented the three boys in

Mr. Valva and Mrs. Valva's divorce proceedings; (2) Ethan Halpern and the Legal

Aid Society[1], who represented the children in neglect proceedings before New York Family Court, and (3) Judge Zimmerman, who awarded temporary custody of the children to Mr. Valva.[2] Pending also is a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) brought by Shana Curti and her law firm, who represented Mr. Valva in the divorce proceedings. The factual background of this case is discussed extensively in my opinion resolving the motion to dismiss brought by Suffolk County and the Defendants associated with Child Protective Services (the "CPS Defendants"). *See Zubko-Valva v. County of Suffolk*, 2022 WL 2161193 (E.D.N.Y. June 15, 2022). I have limited my discussion of the facts here to those relevant to Mrs. Valva's case against Ms. McCabe, Ms. Curti, Mr. Halpern, and Judge Zimmerman.

## FACTUAL BACKGROUND

When Mr. Valva initially instigated divorce proceedings, Mrs. Valva retained custody of the children. ECF No. 64-7 at 3. Judge Ricigliano, who was the first judge assigned to the case, in fact barred Mr. Valva from even having overnight visits with the children after reviewing evidence that Mr. Valva took pictures of his genitals while he was putting the children to sleep. ECF No. 1 ¶¶ 65, 81.

---

[1] The complaint lists the Children's Law Bureau as an additional defendant, but the Children's Law Bureau is part of the Legal Aid Society of Suffolk County. *See* ECF No. 70. The single claim against the Children's Law Bureau is thus dismissed as duplicative.

[2] I address the other Defendants' motions in two additional memoranda that have been filed separately.

But then the case was transferred to Judge Zimmerman in October 2016. ECF No. 58 at 8. After Ms. McCabe, the children's attorney, raised concerns about Mrs. Valva's conduct, including that Mrs. Valva had interfered with the children's examination by the forensic evaluator, Judge Zimmerman awarded temporary custody of the children to Mr. Valva on September 6, 2017. ECF No. 64-8 at 9–22. The complaint alleges that Ms. McCabe's representations to Judge Zimmerman were false and were made to retaliate against Mrs. Valva for filing a motion to remove Ms. McCabe as attorney for the children. ECF No. 1 ¶¶ 64–74. The complaint also alleges that Ms. McCabe and Ms. Curti, Mr. Valva's attorney, were close personal friends and that they conspired with Mr. Valva to convince Judge Zimmerman to award parental custody to Mr. Valva. *Id.* ¶ 61.

The complaint alleges that after the divorce action was transferred to Judge Lorintz in January 2018, Ms. McCabe continued to make false statements about Mrs. Valva to ensure that Mr. Valva retained custody. *Id.* ¶¶ 198–201. Specifically, Mrs. Valva alleges that Ms. McCabe falsely represented to Judge Lorintz that Mrs. Valva had "not seen or called the boys since New Year's Eve" and had not "made any effort to receive information from [the children's] school or doctors and ha[d] not sent cards or gifts for holidays or birthdays." *Id.* ¶ 198. Ms. McCabe also told Judge Lorintz that the boys "individually and in private ha[d] expressed to [her] that they d[id] not want to see their mother and they ha[d] stated reasons for this position." *Id.* ¶ 200. Mrs. Valva alleges that Ms. McCabe made this statement while having

4

evidence, including audio recordings and certified transcripts, that Mr. Valva and Ms. Pollina were trying to brainwash the boys against Mrs. Valva. *Id.* Moreover, Ms. McCabe suggested to the judge that Mrs. Valva had mental health issues and needed a "psychological evaluation." *Id.* By contrast, the complaint alleges that Ms. McCabe painted a rosy picture of Mr. Valva's care, claiming that the boys were "all performing well in school," were "comfortable and assimilated into the household," "celebrated the holidays," and "enjoyed eating." *Id.* ¶ 201. Mrs. Valva alleges that these statements were also false because Mr. Valva and his girlfriend Ms. Pollina were starving and physically and mentally abusing the children. *Id.*

The complaint also alleges that Ms. Curti and Ms. McCabe encouraged Mr. Valva to file false child abuse allegations with CPS on October 31, 2017. *Id.* ¶ 94. Ms. McCabe also spoke directly to CPS on multiple occasions and made false and misleading statements about Mrs. Valva's mental health and her ability to act as a mother. *Id.* ¶ 197. These child abuse allegations eventually led to CPS pursuing a neglect petition against Mrs. Valva.

Mr. Halpern represented Mrs. Valva's children in the neglect proceedings. Similar to her allegations against Ms. McCabe, Mrs. Valva alleges that Mr. Halpern "disregarded his duties and responsibilities" as the attorney for the children in the neglect proceedings and instead focused his efforts on protecting Mr. Valva's rights by ensuring that the neglect petition against Mrs. Valva would continue. *Id.* ¶¶ 186–89. Specifically, Mrs. Valva alleges that, during the neglect proceedings, Mr.

"Halpern stated falsely, under penalty of perjury that [Mrs. Valva] had *admitted to* 'hitting the children'" despite knowing that this was "a bald-faced lie." *Id.* ¶¶ 190–91 (italics in original). Mr. Halpern also told Judge Cheng, who presided over the neglect proceedings, that Mrs. Valva's own testimony established the necessary elements of a neglect finding, when Mr. Halpern knew that this was not the case. *Id.* ¶ 192. Moreover, the complaint alleges that Mr. Halpern was well-aware of Mr. Valva's physical abuse of Tommy when he testified against Mrs. Valva but "did nothing" to protect Tommy and the other children from Mr. Valva. *Id.* ¶¶ 193–94. Instead, the children remained in Mr. Valva's custody until Tommy's death in January 2020.

## DISCUSSION

This opinion resolves the 12(b)(6) motions to dismiss brought by Ms. McCabe and her law firm, Mr. Halpern and the Legal Aid Society, and Judge Zimmerman. It also resolves the 12(c) motion for a judgment on the pleadings brought by Ms. Curti and her law firm.

Because Ms. Curti, along with her law firm defendant Orsetti & Curti PLLC,[3] initially filed an answer to Mrs. Valva's complaint, she could not bring a 12(b)(6) motion because such a motion must be brought "before pleading if a

---

[3] Orsetti & Curti PLLC is listed as a defendant, but Mrs. Valva has brought no claims against Orsetti & Curti PLLC. Orsetti & Curti PLLC is thus dismissed as a defendant in this action.

responsive pleading is allowed." Fed. R. Civ. P. 12(b); *see* ECF No. 30. Instead, Ms. Curti filed a motion under 12(c) for a judgment on the pleadings. Yet a motion under 12(c) can only be brought "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). Since the other defendants in this case have not yet answered Mrs. Valva's complaint, the pleadings remain open and thus Ms. Curti's 12(c) motion is not yet timely. *See Sherman v. City of New York*, 2019 WL 2164081, at *2 (E.D.N.Y. May 16, 2019). Nevertheless, "it is within the court's discretion to treat a Rule 12(c) motion for judgment on the pleadings as a Rule 12(b)(6) motion to dismiss" when "a court cannot definitively deem the pleadings closed." *Id.* at *3. I choose to exercise that discretion here.  Because the standard of review for a 12(c) motion and a 12(b)(6) motion is identical, this decision does not affect my analysis of Ms. Curti's claims. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

In deciding a motion to dismiss under 12(b)(6), the complaint is construed liberally, all factual allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). In addition to the facts alleged in the complaint, I may also consider documents attached, incorporated by reference, or "integral" to the complaint. *Chamberlain v. City of White Plains*, 960 F.3d 100, 105 (2d Cir. 2020).

## I.    Federal Claims

Mrs. Valva brings § 1983 claims for deliberate indifference, malicious prosecution, denial of the right to a free trial, malicious abuse of process, stigma

plus, and conspiracy against attorneys McCabe, Curti, and Halpern. She also brings a § 1983 due process claim against Judge Zimmerman for declaratory relief. To state a claim under § 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983; *see also Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir. 1999).

### A. *§ 1983 Claims Against Ms. McCabe, Ms. Curti, and Mr. Halpern*

To state "a § 1983 claim, a plaintiff must allege that [] the defendant was a state actor, i.e., acting under color of state law, when he committed the violation." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015). Neither private attorneys nor "law guardians who act as 'attorneys for the child' are . . . state actors for the purposes of suits filed pursuant to § 1983." *Id.* at 964 (alterations adopted). Thus, Ms. McCabe, Ms. Curti, and Mr. Halpern are not state actors for § 1983 purposes.

Nevertheless, Mrs. Valva can state a § 1983 claim against Ms. McCabe, Ms. Curti, and Mr. Halpern if they conspired with state officials to violate her constitutional rights. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). Mrs. Valva fails to adequately allege such a conspiracy. While she does allege that Ms. McCabe and Ms. Curti conspired with each other to urge Judge Zimmerman to award custody to Mr. Valva, ECF No. 1 ¶ 61, she does not specifically allege that either defendant conspired with a state actor. Mrs. Valva attempts to argue that Mr. Valva was a state actor with whom Ms. Curti and Ms. McCabe conspired because he

was a police officer. But Mr. Valva was not acting as a police officer during his own matrimonial and family court proceedings and so, cannot be considered a state actor for purposes of Mrs. Valva's § 1983 claims against Ms. McCabe and Ms. Curti. *See West v. Atkins*, 487 U.S. 42, 50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). Mrs. Valva alternatively relies on her allegations that private attorneys Curti, McCabe, and Halpern conspired with the CPS Defendants to violate her constitutional rights. But those allegations are too vague and conclusory to demonstrate a conspiracy between these private actors and state officials. ECF No. 1 ¶ 340–44; *see Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed."). Because Mrs. Valva does not plausibly allege that Ms. Curti, Ms. McCabe, and Mr. Halpern conspired with state actors to deprive her of her constitutional rights, the motions to dismiss all § 1983 claims against Ms. McCabe, Ms. Curti, and Mr. Halpern are granted.

B. *§ 1983 Claim Against Judge Zimmerman*

Mrs. Valva seeks a declaratory judgment under 42 U.S.C. § 1983 that Judge Zimmerman's order temporarily removing the children from Mrs. Valva custody violated Mrs. Valva's due process rights. ECF No. 1 at 99. Mrs. Valva concedes that the doctrine of absolute judicial immunity would bar a claim for damages. Indeed,

"[i]t is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). Mrs. Valva argues, however, that judicial immunity does not apply to claims for declaratory relief. *See Rolle v. Girardi*, 689 F. App'x 64, 65 (2d Cir. 2017) ("Because Rolle sought only injunctive and declaratory relief, the district court erred in dismissing on the basis of judicial immunity." (citing *Pulliam v. Allen*, 466 U.S. 522, 541–43 (1984)).

But regardless of whether a plaintiff may seek declaratory relief against a judge under § 1983, Mrs. Valva lacks standing to pursue such a claim here. Like all plaintiffs, a party seeking declaratory relief "must allege an actual case or controversy." *Deshawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). "Specifically, a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." *Id.* And, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Id.* In other words, to obtain a declaratory judgment "a plaintiff must show, *inter alia*, 'a sufficient likelihood that he [or she] will again be wronged in a similar way.'" *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (alterations in original) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

In this case, Mrs. Valva has failed to allege that she will suffer any future injury attributable to Judge Zimmerman's temporary order or that she is at risk of "again be[ing] wronged in a similar way." *Id.* Indeed, Mrs. Valva acknowledges that no aspect of Judge Zimmerman's September 6, 2017 temporary custody order is still in effect. Nor does Mrs. Valva contend that Judge Zimmerman will take similar actions against her in the future. Rather, Mrs. Valva argues that she has standing to pursue this claim because "[t]o this day [she] is questioned as to why she lost custody of the children, and it is presumed by the public at large that [she] must have been a 'bad mother,' or done something else wrong, to have had her children taken away by the court system in the first place." ECF No. 1 ¶ 330.

That allegation, however, does not suffice to establish standing. For starters, Mrs. Valva's complaint does not "trace[]" this injury, *Deshawn E.*, 156 F.3d at 344, to Judge Zimmerman's order. Rather she claims this injury resulted from the alleged false, misleading, or defamatory statements other defendants made about her. *See* ECF No. 1 ¶¶ 325–30, 403–11. Mrs. Valva also does not explain how the declaratory judgment she seeks would help "redress th[is] injury." *Deshawn E.*, 156 F.3d at 344. Moreover, allowing Mrs. Valva to establish standing to pursue declaratory relief with respect to a state court judgment based on an allegation of injury consisting of unwanted attention and reputational harm would effectively open the courthouse doors to limitless § 1983 suits against state judges by losing parties.

In the end, Mrs. Valva's claim for a declaratory judgment against Judge Zimmerman seeks to right past wrongs, not to prevent future ones. Thus, Judge Zimmerman's motion to dismiss is granted. *See Rolle v. Girardi*, 689 F. App'x 64, 65 (2d Cir. 2017) (upholding the dismissal of a claim for declaratory relief against a state judge for lack of standing because the plaintiff, who alleged he was unconstitutionally prevented from observing a trial, did "not plausibly allege[] that he will observe proceedings before [the judge] in the future . . . or that [the judge] will unlawfully order him to leave the courtroom again"); *Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) ("Nor is [Plaintiff] entitled to entitled to declaratory relief [against a state court judge] because he alleges only past conduct and does not seek to prevent an ongoing or future violation of federal law." (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996))).

## II.  State Law Claims

Mrs. Valva brings New York state law claims against Ms. McCabe, Ms. Curti, and Mr. Halpern for wrongful death, conscious pain and suffering, defamation, and intentional infliction of emotional distress ("IIED"). Mrs. Valva also brings a New York state law malpractice claim against Ms. McCabe, the Law Office of Donna McCabe, Mr. Halpern, and the Legal Aid Society of Suffolk County. And Mrs. Valva brings New York state law claims for negligence and for violation of New York Social Services Law section 413 against Ms. McCabe and Mr. Halpern.

In deciding the motion to dismiss brought by Suffolk County and the CPS Defendants, I have allowed certain federal law claims to proceed against Suffolk County and the CPS Defendants. *See Zubko-Valva*, 2022 WL 2161193, at *4–13. Those claims arise from the "same case or controversy" as the state law claims against Ms. McCabe, Ms. Curti, Mr. Halpern, and their respective legal organizations: the actions of public and private officials that allowed the abuse of Mrs. Valva's children by Mr. Valva and Ms. Pollina to continue, eventually resulting in Tommy's death. 28 U.S.C. § 1367(a). I thus have supplemental jurisdiction over these claims and decline to exercise my discretion to dismiss them. *See id.* § 1367(a), (c).

### 1. *Defamation*

Mrs. Valva alleges that Ms. McCabe, Ms. Curti, and Mr. Halpern "misrepresented and falsified evidence" about Mrs. Valva and her children and "published these false claims to various third parties, including but not limited to the Suffolk County Department of Social Services, Judge Zimmerman, Judge Lorintz[,] and Judge Cheng, and to other third parties involved in the matrimonial and family court proceedings." ECF No. 1 ¶ 404. Under New York law, a defamation action must be "commenced within one year" of the event from which it arises, N.Y. C.P.L.R. 215(3). But Mrs. Valva does not allege that Ms. Curti, Ms. McCabe, or Mr. Halpern took any actions relevant to this case after the neglect proceedings against Mrs. Valva terminated in April 2019. *See* ECF No. 1 ¶¶ 64–72, 186–201; ECF No.

79 at 1. Considering Mrs. Valva filed this case on June 16, 2020, her defamation claims are untimely. I thus grant Ms. Curti's, Ms. McCabe's, and Mr. Halpern's motions to dismiss Mrs. Valva's defamation claims against them.

2. *IIED*

Mrs. Valva generally alleges that Ms. McCabe, Ms. Curti, and Mr. Halpern intentionally "engaged in extreme and outrageous conduct" in order to cause "severe emotional distress to [Mrs. Valva] and her three children." ECF No. 1 ¶¶ 397–402. Under New York law, a plaintiff must file an IIED claim within one year of the events underlying it. *See* N.Y. C.P,L.R.215(3); *Havell v. Islam*, 739 N.Y.S.2d 371, 372 (N.Y. App. Div. 2002) ("A claim for damages for an intentional tort, including a tort not specifically listed in CPLR 215(3), is subject to a one-year limitation period."); *Neufeld v. Neufeld*, 910 F. Supp. 977, 981 (S.D.N.Y. 1996) (applying a one-year statute of limitations period to an IIED claim under New York law). Again, Mrs. Valva does not allege that Ms. Curti, Ms. McCabe, or Mr. Halpern took any actions relevant to this case after the neglect proceedings against Mrs. Valva terminated in April 2019. *See* ECF No. 1 ¶¶ 64–72, 186–201; ECF No. 79 at 1. Since Mrs. Valva did not file her complaint until June 16, 2020, her IIED claims against Ms. McCabe,

Ms. Curti, and Mr. Halpern are untimely.[4] Thus, the motions to dismiss the IIED claims against Ms. McCabe, Ms. Curti, and Mr. Halpern are granted.

### 3. *Violation of Social Services Law Section 413*

Mrs. Valva alleges that Ms. McCabe and Mr. Halpern violated New York Social Services Law section 413 by failing to report that Mr. Valva and Ms. Pollina were abusing Mrs. Valva's children when they were acting as the children's attorneys. ECF No. 1 ¶¶ 461–73. New York Social Services Law section 413(1)(a) imposes on certain listed "persons and officials" the duty to report "when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child." The more than forty listed "persons and officials" do not include court-appointed attorneys for children or legal aid employees. *Id.* Since Ms. McCabe and Mr. Halpern worked with Mrs. Valva's children only in their capacities as court-appointed attorneys for children, Ms. McCabe and Mr. Halpern did not have a duty under Social Services Law section 413 to report any abuse they may have been aware of. Thus, the motions to dismiss the violation of Social Services Law section 413 claims against Ms. McCabe and Mr. Halpern are granted.

---

[4] Although Ms. McCabe does not raise the statute of limitations issue in her motion to dismiss, I have chosen to raise it sua sponte. *See Walters v. Indus. & Com. Bank of China*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where 'the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.'" (quoting *Leonhard v. United States*, 633 F.2d 599, 609 n.11 (2d Cir. 1980))).

4. *Legal Malpractice*

Mrs. Valva alleges legal malpractice claims on behalf of her children against Ms. McCabe, the Law Office of Donna McCabe, Mr. Halpern, and the Legal Aid Society of Suffolk County. She alleges that these defendants advocated that their clients—Mrs. Valva's children—remain in Mr. Valva and Ms. Pollina's custody despite knowing that Mr. Valva and Ms. Pollina were abusive. ECF No. 1 ¶¶ 474–99. "To state a cause of action to recover damages for legal malpractice, a plaintiff must allege: (1) that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession; and (2) that the attorney's breach of the duty proximately caused the plaintiff actual and ascertainable damages." *Katsoris v. Bodnar & Milone, LLP*, 131 N.Y.S.3d 89, 91 (N.Y. App. Div. 2020).

Mrs. Valva has adequately alleged a malpractice claim against Ms. McCabe and the Law Office of Donna McCabe. As the children's lawyer in the divorce proceedings, Ms. McCabe owed the children a duty to "zealously advocate the child[ren]'s position." N.Y. Comp. Codes R. & Regs. tit. 22 § 7.2(d). Mrs. Valva alleges that Ms. McCabe conspired with Ms. Curti to convince Judge Zimmerman to transfer custody of the children from Mrs. Valva to Mr. Valva. ECF No. 1 ¶¶ 61, 482–85. Mrs. Valva plausibly alleges that being transferred to their abusive father was not the children's position, particularly since that action resulted in Tommy's death, as well as physical and mental harm to Anthony and Andrew. Thus, the motion

16

to dismiss the legal malpractice claim against Ms. McCabe and the Law Office of Donna McCabe is denied.

Mrs. Valva has also stated a malpractice claim against Mr. Halpern and the Legal Aid Society of Suffolk County for Mr. Halpern's representation of the children in the neglect proceedings. Mrs. Valva alleges that Mr. Halpern did not meet with Mrs. Valva's children once during the neglect proceedings and refused to follow up on "the plethora of evidence" Mrs. Valva provided to him of Mr. Valva and Ms. Pollina's abuse of the children. *Id.* ¶ 188. Since an "attorney for the child must consult with and advise the child" to develop "a thorough knowledge of the child's circumstances," Mrs. Valva has plausibly alleged that Mr. Halpern violated his duty to his children clients in this regard. N.Y. Comp. Codes R. & Regs. tit. 22 § 7.2(d); *see Mark T. v. Joyanna U.*, 882 N.Y.S.2d 773, 776 (N.Y. App. Div. 2009) ("By proceeding on the appeal without consulting and advising his client, appellate counsel [for the child] failed to fulfill his essential obligation."). Presumably, if Mr. Halpern had adequately consulted with his clients, he would have learned of the abuse they were suffering at the hands of Mr. Valva and Ms. Pollina.

While Mr. Halpern only represented Mrs. Valva's children in the neglect petition brought against Mrs. Valva, an attorney for a child has the duty to evaluate "the pursuit of other issues on behalf of the child, administratively or judicially, even if those issues do not appear to arise from the court appointment." Standards for Attorneys Representing Children in Child Protective, Foster Care, Destitute Child &

17

Termination of Parental Rights Proceedings D-13 (N.Y. State Bar Assoc. 2015). Given the overwhelming evidence of Mr. Valva's abuse, Mrs. Valva plausibly alleges that Mr. Halpern had a duty, in advocating for the position of Mrs. Valvas's children, to pursue "the imposition of some restrictions on [Mr.] Valva's custody of the children," even if that was not the original purpose of his appointment. ECF No. 1. ¶ 194. Because Mrs. Valva's allegations at this stage are sufficient to state a malpractice claim against Mr. Halpern and the Legal Aid Society of Suffolk County, I deny their motion to dismiss the legal malpractice claim.

## 5. *The Remaining State Law Claims*

Mrs. Valva also brings wrongful death and conscious pain and suffering claims against Ms. McCabe, Ms. Curti, and Mr. Halpern, as well as a negligence claim against Ms. McCabe and Mr. Halpern.[5]

The wrongful death claim may not proceed against Ms. Curti. To state a claim for wrongful death under New York law, a plaintiff must allege "a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. Ests. Powers & Trusts Law § 5-4.1(1). Mrs. Valva has not adequately

---

[5] Ms. Curti and Mrs. Valva seem to be under the impression that Mrs. Valva has brought a negligence claim against Ms. Curti as well, but Mrs. Valva's complaint does not list Ms. Curti as a defendant to the negligence claims. ECF No. 1 ¶¶ 430–60. In any case, it is doubtful that Mrs. Valva could state a negligence claim against Ms. Curti because Ms. Curti has never represented Mrs. Valva or her children.

alleged any wrongful or negligent act Ms. Curti committed that caused Tommy's death. While Ms. Curti's enthusiastic advocacy for her client Mr. Valva enabled him to secure custody of Mrs. Valva's children, including Tommy, Mrs. Valva has not plausibly alleged that Ms. Curti committed any illicit acts in her advocacy on behalf of Mr. Valva or otherwise violated any duty she owed Mrs. Valva or her children. *See* ECF No. 1 ¶¶ 47–62. Mrs. Valva's vague allegations of a "plan" or "conspiracy" between Ms. Curti and Ms. McCabe to secure custody for Mr. Valva are insufficient to establish any wrongful conduct on the part of Ms. Curti. *Id.* ¶¶ 47–48, 56; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). Thus, the motion to dismiss the wrongful death claim against Ms. Curti is granted. And because Mrs. Valva's conscious pain and suffering claim against Ms. Curti is predicated on the same facts as her wrongful death claim, the motion to dismiss the conscious pain and suffering claim against Ms. Curti is granted as well.

However, the wrongful death claim may proceed against Ms. McCabe and Mr. Halpern because their alleged legal malpractice could amount to a wrongful or negligent act. Moreover, since the wrongful death, conscious pain and suffering, and negligence claims against Ms. McCabe and Mr. Halpern arise from the same events that underly the legal malpractice claims against them, it is unnecessary to explore these additional state law claims at length.

> If one of a number of integrally related causes of action have to be tried, it makes little sense to grant a motion to dismiss as to one or more of them, as it may prove necessary to hold yet another trial in the event that it is determined

on appeal that the motion to dismiss was improperly granted. As observed by Judge Clark in an analogous context: "[T]here seems no question that in the long run fragmentary disposal of what is essentially one matter is unfortunate not merely for the waste of time and expense caused the parties and the court, but because of the mischance of differing dispositions of what is essentially a single controlling issue."

*Thibodeaux v. Travco Ins. Co.*, 2014 WL 354656, at *2 (E.D.N.Y. Jan. 31, 2014)

(quoting *Audi Vision Inc. v. RCA Mfg. Co.*, 136 F.2d 621, 625 (2d Cir. 1943)). The

motions to dismiss the wrongful death, negligence, and conscious pain and suffering

claims against Ms. McCabe and Mr. Halpern are denied.

## CONCLUSON

The New York law claims for legal malpractice may proceed against Ms. McCabe, the Law Office of Donna McCabe, Mr. Halpern, and the Legal Aid Society of Suffolk County. The New York law claims for wrongful death, negligence, and conscious pain and suffering may proceed against Ms. McCabe and Mr. Halpern. The rest of the claims against Ms. McCabe, Ms. Curti, Mr. Halpern, the Children's Law Bureau, and Judge Zimmerman are DISMISSED.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York                    Edward R. Korman
June 17, 2022                         United States District Judge