**BOSWORTH LAW, LLC**
*Attorneys for Plaintiff*
By:    THOMAS E. BOSWORTH, ESQ.
Attorney I.D. No. 323350
123 South Broad Street, Suite 1620
Philadelphia, PA 19109
(267) 928-4183
tom@bosworthfirm.com

| | |
|---|---|
| JUSTYNA ZUBKO-VALVA, as Mother and Natural Guardian of ANTHONY VALVA and ANDREW VALVA, and as Administratrix of the Estate of THOMAS VALVA, and JUSTYNA ZUBKO-VALVA individually,<br><br>*Plaintiff,*<br><br>v.<br><br>THE COUNTY OF SUFFOLK et al.<br><br>*Defendants.* | UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK<br><br>20-CV-2663 |

## PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH INFANT COMPROMISE APPLICATION

Plaintiff, Justyna Zubko-Valva, individually on her own behalf, as Administrator of the Estate of Thomas Valva, and as Mother and Natural Guardian of Anthony Valva and Andrew Valva, by and through her undersigned counsel, Thomas E. Bosworth, Esq. of Bosworth Law LLC and Liakas Law, P.C., files the instant Motion for Approval of Settlement with Infant Compromise Application, in support thereof, avers as follows:

### PROCEDURAL BACKGROUND

1.    Plaintiff submits this revised Motion for Approval of Settlement following, and in consideration of, this Court's June 8, 2026 Order denying Plaintiff's original Motion for Approval of Settlement (ECF 199). The Court's June 8, 2026 Order denying the original Motion for

1

Approval of Settlement stated as follows: "Defendants' response to plaintiffs' motion makes it clear that there is no settlement on the terms proposed by the motion. Specifically, the parties have not agreed to a general release, stipulation of discontinuance, or proposed order approving settlement (inclusive of a payment plan). Discovery and trial will move forward as scheduled."

2.       Since the Court's June 8, 2026 Order denying the original Motion for Approval of Settlement, the parties *have* come to an agreement on a general release, stipulation of discontinuance, and proposed order. Specifically, Plaintiff has signed and executed a notarized general release agreed to by all parties. *See* Executed General Release, attached as Exhibit "A." Moreover, all parties agree to the attached Stipulation of Discontinuance. *See* Stipulation of Discontinuance, attached as Exhibit "B." Plaintiff's proposed Order, which is attached here as Exhibit "C," includes a proposed allocation of settlement proceeds, which defendants take no position on.[1] Otherwise, all parties are in general agreement regarding the terms outlined in the proposed order.

3.       This civil action arises out of the preventable death of Plaintiff's minor son, Thomas ("Tommy") Valva ("Decedent"), on January 17, 2020, at the tender age of 8.

4.       While in the custody of their biological father, Michael Valva ("Michael") and Mr. Valva's then-fiancée, Angela Pollina ("Pollina"), Tommy, Anthony, and Andrew suffered and endured unspeakable abuse, starvation and torture inflicted by their father and Pollina for several years.

5.       Throughout the time that the children were being tortured, starved and abused physically, mentally and sexually by their father, Pollina, and other high-ranking sexual abusers,

---

[1] The allocation for Plaintiff Justyna Zubko-Valva's direct claims does not require the same infants' compromise review as portions allocated to the Infant Plaintiffs and the Estate of Thomas Valva. This portion represents Plaintiff Justyna Zubko-Valva's direct claims and should be approved as part of the global settlement.

Plaintiff, children's mother, never stopped reporting the suspected abuse and attempting to regain custody of the children. The lives of Plaintiff's little children were in grave danger of being lost.

6.      The torture the children endured at the hands of their father and Pollina included denying access to food, water, heat, clothing, eating hot peppers, being hosed down with icy cold water in the backyard during wintertime, and being forced to sleep in their father's freezing-cold Long Island garage without any mattress, blankets, pillows, source of heat or access to the bathroom.

7.      On January 17, 2020, Tommy was brutally murdered after being forced to spend another night among many prior nights locked together with his brother Anthony in their father's and Pollina's subfreezing garage immediately after returning from school the previous day. The children were forced to suffer being locked in the garage 16 hours per day with only a few hours of a break while attending school.

8.      The defendants in this action, which include The County of Suffolk, various CPS employees, Attorney Donna McCabe, East Moriches Union Free School District, and the Legal Aid Society of Suffolk County, Inc., failed, through deliberate indifference and gross negligence, in various different ways, to properly investigate and detect the abuse, starvation and torture of the children prior to Tommy's death.

9.      In addition, various of the defendants are liable for their conduct in bringing false and unfounded claims against Justyna Zubko-Valva, defaming Ms. Zubko-Valva, maliciously abusing process in prosecuting unsupported allegations against Ms. Zubko-Valva, and legal malpractice in representation of Ms. Zubko-Valva in connection with her custody dispute with the murderer-father of her children.

10.     Plaintiff Justyna Zubko-Valva's Complaint asserts the following individual, direct and personal claims made on Plaintiff Justyna Zubko Valva's own behalf, which survived motions to dismiss for failure to state a claim:

Count One: Deliberate Indifference under 42 U.S.C. § 1983 as to five CPS defendants in their individual capacities

Count Three: Fabrication of Evidence/Denial of the Right to a Fair Trial under 42 U.S.C. § 1983 as to five CPS defendants in their individual capacities

Count Five: "Stigma Plus" Claim under 42 U.S.C. § 1983 as to five CPS defendants in their individual capacities

Count Eight: Municipal Liability as to Suffolk County

Count Fourteen: Intentional Infliction of Emotional Distress as to School District, Defendant Russo, and Defendant Schneyer

Count Seventeen: Negligent Hiring/Training/Supervision/Retention as to School District

Count Twenty:[2] Negligence as to the AFC Defendants – McCabe and Halpern

Count Twenty-One:[3] Violation of Social Services Law § 413 as to School District, Defendant Russo, and Defendant Schneyer

11.     Plaintiff's Complaint also asserted claims on behalf of her minor children, Anthony and Andrew, which survived motions to dismiss for failure to state a claim:

Count Twenty-Two:[4] Legal Malpractice as to Defendants Donna McCabe and The Law Office of Donna McCabe

Count Twenty-Three:[5] Legal Malpractice as to Defendants Ethan Halpern, Legal Aid Society of Suffolk County, Inc., and Children's Law Bureau

---

[2] This count was mislabeled by prior counsel as the nineteenth claim for relief on page 90 of the complaint.

[3] This count was mislabeled by prior counsel as the twentieth claim for relief on page 91 of the complaint.

[4] This count was mislabeled by prior counsel as the twenty-first claim for relief on page 93 of the complaint.

[5] This count was mislabeled by prior counsel as the twenty-second claim for relief on page 95 of the complaint.

12.    Plaintiff's Complaint also includes claims for the wrongful death and conscious pain and suffering of her son, Tommy Valva (Counts Ten and Eleven in the Complaint) as to the School District, Defendant Charles Russo, Defendant Edward Schneyer, Defendant Ethan Halpern, and Defendant Donna McCabe.

13.    Plaintiff is the Mother and Natural Guardian of the Infant Plaintiffs and was duly appointed by the Suffolk County Surrogate's Court as Administrator of the Estate of Thomas Valva ("Estate") on March 18, 2021. *See* LOA, attached as Exhibit "D."

14.    The parties previously reached a total settlement in the amount Nine Million Dollars ($9,000,000.00) on September 24, 2025.

## SETTLEMENT TERMS

15.    The total settlement amount in this case is  $9,000,000.00 (the "Global Offer") for settlement of the Claims in full. *See* Global Offer, attached as Exhibit "E."

16.    By agreement of all parties, the total settlement amount of $9,000,000.00 should be paid in full by Defendants within thirty (30) days after the entry of the Court's Order approving settlement and Infants' Compromise or after Plaintiffs' delivery of the executed General Release and W-9, whichever occurs later. The total settlement of $9,000,000.00 should be allocated and payments issued as indicated in Plaintiffs' Proposed Order.

17.    Plaintiff has previously executed and notarized a general release agreed to by all parties which is attached to this Motion as Exhibit "A." Moreover, all parties agree with the Stipulation of Discontinuance, which is attached to this Motion as Exhibit "B." Plaintiffs' Proposed Order, which is attached to this Motion as Exhibit "C," has not been opposed by Defendants, who take no position on Plaintiffs' proposed allocation and provided their acceptance

5

of Plaintiff's position for submitting it to the Court with her requested allocations. *See* Proposed

Order, attached as Exhibit "C."

## ALLOCATION OF SETTLEMENT

18.     Plaintiff's proposed apportionment of the net settlement proceeds (after

contingency-fee deduction of 33.33%)—with which the Settling Defendants take no position—for

the claims for each children are as follows: the sum of $177,342.20 as settlement for the claims of

Anthony Valva, the sum of $177,342.20 as settlement for the claims of Andrew Valva, and

$5,214,004.29 as settlement to be paid directly to Plaintiff Justyna Zubko-Valva for Plaintiff

Justyna Zubko-Valva's direct, personal claims, $215,806.12 for all claims for wrongful death

provided to Justyna Zubko-Valva as sole distribute, and $215,806.12 for conscious pain and

suffering of Tommy Valva provided to the Estate of Thomas Valva where Justyna Zubko-Valva

is the Administratrix.

19.     There are no creditors or claims against the Estate and since Decedent is survived

by his mother, no one will be prejudiced by the allocation herein.

20.     There are no outstanding medical bills relating to the underlying claims for

Anthony Valva and Andrew Valva.

21.     By sworn affidavit, Plaintiff approves this settlement, and has provided all

necessary information regarding: (a) the name, residence and relationship of plaintiff to the infant-

plaintiffs; (b) name, age and residence of the infant-plaintiffs; (c) the circumstances giving rise to

the action or claim; (d) the nature and extent of damages sustained by the infant-plaintiffs; and (e)

that the terms and proposed distribution of the settlement proceeds are reasonable and approved;

(f) the facts surrounding any other motion or petition for settlement of the same claim, or an action

to recover on the same claim or the same action; (g) whether reimbursement for medical or other

expenses has been received from any source; and (h) whether the infant-plaintiffs' representative or any member of the infant's family has made a claim for damages alleged to have been suffered as a result of the same occurrence giving rise to the infant's claim and, if so, the amount to be paid in settlement of such claim. *See* Plaintiff's Revised Affidavit in Support of Motion for Settlement Approval with Infant Compromise Application with Documentary Evidence (Exhibits F1 to F27) ¶ 42 at pp. 24-29, attached as Exhibit "F."

## LEGAL STANDARD

22.     Federal courts possess jurisdiction to approve an infant compromise. *See, e.g.*, *D.J. v. City of New York*, No. 11 Civ. 5458(JGK)(DF), 2012 WL 5431034 (S.D.N.Y. Oct. 16, 2012).

23.     Local Rule of Civil Procedure 83.2 governs infant compromise petitions.

24.     Under this rule, "[a]n action by or on behalf of an infant or incompetent person must not be settled or compromised, or voluntarily discontinued, dismissed, or terminated without leave of the court embodied in an order, judgment, or decree." *See* Local R. Civ. P. 83.2(a)(1).

25.     Under this rule, "[t]he proceeding upon an application to settle or compromise such an action must conform, as much as possible, to the New York State statutes and rules, but the court, for cause shown, may dispense with any New York State requirement." *Id.*

26.     In ruling on an infant compromise motion, the court determines whether: (1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; (2) and the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable." *E.g.*, *Martegani v. Cirrus Design Corp.*, 687 F. Supp. 2d 373, 377 (S.D.N.Y. 2010).

**ATTORNEYS FEES AND DISBURSEMENTS**

27.    This Court has the authority to order and approve of the distribution of any attorney's fee.[6]

28.    Plaintiff retained Thomas E. Bosworth, Esq. ("Counsel") to prosecute the Claims, pursuant to an agreement that provided that Plaintiff would pay Counsel, on account of professional services rendered, 33.33% of the gross settlement amount and reimburse the expenses advanced by Plaintiff's Counsel in investigating the Claims and prosecuting the Action.

29.    In ruling on cases involving an infants' compromise and also those involving wrongful death, contingent-fee agreements providing for a one-third (33.33%) attorneys' fee have consistently been held to be reasonable. *See, e.g.*, *Cai v. Cream-O-Land Dairies, LLC*, 20 CV 1053 (LB), 2021 WL 7210785, at *2 (E.D.N.Y. Jan. 25, 2021); D.*L.G. v. United States*, No. 12-CV-7526 (RA), 2015 WL 6736163, at *9 (S.D.N.Y. Nov. 3, 2015); *Jurdine v. City of New York*, No. 07-CV-2915 (CBA), 2008 WL 974650, at *4 (E.D.N.Y. April 8, 2008).

30.    Plaintiff, Justyna-Zubko Valva, approves of payment of a one-third (33.33%) contingency fee to Plaintiff's counsel, Thomas E. Bosworth, Esq. *See* Plaintiff's Revised Affidavit in Support of Motion for Settlement Approval with Infant Compromise Application ¶¶ 10-11, 20-21, 28-30, 35-40, attached as Exhibit "F" (consistently acknowledging approval of this contingency fee throughout).

31.    It was understood that Counsel would apply to the Court for approval of its fees and payment thereof out of the proceeds of the Claims.

---

[6] This Court's jurisdictional authority regarding approval of a fee includes the competent jurisdictional authority to assess whether and to what extent a former lawyer is entitled to assert a lien pursuant to New York Judicial Law § 475 (McKinney). *See, e.g.*, *Haggard Internat'l Corp. v. United Co. for Food Indus. Corp.*, 03-cv-5789, 2013 WL 3356953, at *2 (E.D.N.Y. July 3, 2013); *Louima v. City of New York*, No. 98-cv-5083, 2004 WL 2359943, at *57 (E.D.N.Y. Oct. 5, 2004).

32.     Thomas E. Bosworth, Esq. and Bosworth Law, LLC waives its claims to any reimbursement for expenses and disbursements.

33.     Since being retained, undersigned Plaintiff's counsel has performed the following services in representing Plaintiff in the prosecution of the Claims:

a.  Investigated the merit and value of the Claims by procuring, reviewing and analyzing all available medical and hospital records, party statements, photographs, agency records and voluminous incident reports prepared in the ordinary course of business;

b.  Obtained relevant available information with a view toward assessing the nature and scope of pecuniary loss suffered by the distributees by reason of Decedent's wrongful death and whether and to what extent Decedent experienced conscious pain and suffering;

c.  Conducting interviews with Plaintiff and obtaining all information and documentation available to Plaintiff relating to the Claims and all information available to Plaintiff relating to Infant Plaintiffs, Decedent's distributees, genealogy, assets;

d.  Reviewed hundreds of documents produced by the defendants, including CPS reports, school records, and court records to gather a full and complete understanding of the nature of the liability of the defendants in this action;

e.  Engaged numerous expert witnesses to prepare them to offer opinions in this action regarding the claims and defenses in this action;

f.  Prepared and served notices of deposition on dozens of defendants' witnesses and non-party witnesses;

9

g.  Prepared for and attended a discovery conference with the Court on January 8, 2025;

h.  Prepared for and attended a status conference with the Court on March 11, 2025;

i.  Prepared for and attended a status conference with the Court on April 23, 2025;

j.  Prepared for and attended a status conference with the Court on April 28, 2026;

k.  Review of Defendants' Answers; Review of voluminous discovery responses;

l.  Extensively negotiated with Defendants' counsel to secure a global settlement offer of $9,000,000.00. This included attending an all-day in-person mediation at the federal courthouse in Central Islip, New York, on July 7, 2025, followed by a second mediation session on July 25, 2025, and a third mediation session on September 11, 2025. Since April 24, 2025, when mediation was ordered by the Court, undersigned counsel participated in the receipt or sending of 205 emails with the court-appointed mediator, plus 11 separate phone calls and Zoom meetings with the mediator, in furtherance of securing and effectuating this settlement on behalf of the Plaintiff;

m.  Conducted significant legal research regarding the mechanism needed for court approval of this settlement;

n.  Drafted and prepared the instant motion for approval of settlement;

o.  Prepared and drafted Plaintiff's previously filed Motion for Approval of Settlement; and

p.  Engaged in various mediation sessions and communications with the court-appointed mediator and all parties in June 2026 and July 2026 to finalize the terms of the settlement.

34.     All of the foregoing services were or will be necessarily rendered for the zealous representation of Plaintiff and the diligent prosecution of the Claims and the Action. None of the foregoing services was or will be rendered in any matter not connected with this matter.  Plaintiff's counsel has not been paid for the foregoing professional services.

35.     Movant and Plaintiff request the court reject any fees or disbursements claimed by prior counsel, Jon L. Norinsberg, Esq., be paid from the settlement proceeds.

36.     Plaintiff's former counsel, Attorney Norinsberg, is not entitled to any fee or reimbursement for multiple reasons.

37.     First, under the plain language of Attorney Norinsberg's retainer agreement with Plaintiff, Attorney Norinsberg waived the right to collect any fee in this matter in the event that he (Attorney Norinsberg) terminated the attorney-client relationship. *See* Former Counsel's Retainer Agreement ¶ 11 (stating that former counsel "reserves the right to terminate this attorney-client relationship for any reason, at any time" and that "[i]f JON L. NORINSBERG, ESQ., PLLC terminates this relationship, **<u>there is no fee due from the client</u>**"), attached as Exhibit "G" (emphasis added).

38.     Over two years ago, on September 22, 2023, Plaintiff's former counsel terminated the attorney-client relationship when he filed motion to withdraw as Plaintiff's counsel. (ECF Nos. 118, 119). Indeed, Plaintiff opposed her former counsel's withdrawal as counsel. (ECF No. 126). By order dated November 15, 2023, Plaintiff's former counsel's motion to withdrawal was granted by this Court, thereby effectuating former counsel's termination of his attorney-client relationship with Plaintiff. (ECF No. 129).

39.     Under New York law, it is well-settled that "*quantum meruit* relief is available only where a contract does not expressly cover the terms of an attorney's compensation in the event

11

that the attorney is terminated or withdraws." *Judd Bernstein, P.C. v. Long*, 180 F. Supp. 3d 308, 313 (S.D.N.Y. 2016) (citing *Whitman Realty Grp., Inc. v. Galano*, 41 A.D.3d 590, 593, 83 N.Y.S.2d 585 (2d Dep't 2007)).

40.    To this end, New York law allows parties (*i.e.* lawyers and their clients) to contract around the default *quantum-meruit* rule. *See id.* ("[T]hat New York courts have found standard contingency fee agreements not to cover early termination or withdrawal does not preclude parties from expressly contracting for those scenarios, in which case *quantum meruit* relief would no longer be available.").

41.    Here, that is exactly what Plaintiff and her former counsel did. The language in their retainer agreement is clear and unambiguous. If former counsel terminated the attorney-client relationship, then former counsel is not entitled to any fee whatsoever. *See* Former Counsel's Retainer Agreement ¶ 11 (stating that former counsel "reserves the right to terminate this attorney-client relationship for any reason, at any time" and that "[i]f JON L. NORINSBERG, ESQ., PLLC terminates this relationship, **<u>there is no fee due from the client</u>**"), attached as Exhibit "G" (emphasis added). That is what happened here. Former counsel terminated the attorney-client relationship. Therefore, former counsel is not entitled to any fee whatsoever.[7] For this reason alone, the Court should rule that former counsel is not entitled to any fee or reimbursement from Plaintiff.

42.    But, even if this Court were to somehow to rule that former counsel's retainer agreement does not preclude his right to collect a fee, under well-established common-law principles, the Court should still hold that former counsel is entitled to no *quantum meruit* fee or

---

[7] The language in former counsel's retainer agreement—"there is no fee due from the client"— could not be clearer. This language ("no fee") obviously encompasses *any* fee, whether a contingency-based fee by contract or a fee by way of *quantum meruit* or otherwise.

lien due to former counsel's impropriety and misconduct in handling this case prior to termination of his representation.

43.     Under New York law, "impropriety or misconduct on the part of the attorney" are independent bases to decline awarding a *quantum meruit* fee to a former lawyer. *See, e.g.*, *D'Jamoos v. Griffith*, 340 F. App'x 737, 741 (2d Cir. 2009) (quoting *Garcia v. Teitler*, 212 443 F.3d 202, (2d Cir. 2006)); *see also Marschke v. Cross*, 82 A.D.2d 944 (3d Dep't 1981) ("If a discharge for cause is shown or misconduct is shown, then the outgoing attorney has no right to a fee nor to a retaining lien.").

44.     In this case, Plaintiff's former counsel inexcusably failed to timely file a Notice of Claim against defendant, Suffolk County, and seven other defendants employed by Suffolk County Child Protective Services ("CPS"). This misfeasance was the subject of a published Opinion authored by this Court. *See Zubko-Valva v. Cty. of Suffolk*, 607 F. Supp. 3d 301, 320 (E.D.N.Y. 2022).

45.     More specifically, former counsel failed to timely file the Notice of Claim in accordance with New York General Mutual Law § 50-e(3)(c). *Id.*

46.     In addition to untimely service, former counsel failed to serve the Notice of Claim in the required manner as proscribed by New York General Mutual Law § 50-e(3)(a). *Id.*

47.     As a result of these inexcusable failures, this Court dismissed all of Plaintiff's state-law claims against defendant, Suffolk County, and the other seven Suffolk County CPS defendants. *Id.*; (ECF No. 81).

48.     Following the Court's dismissal of all Plaintiff's state-law claims, Plaintiff's former counsel filed a "Letter regarding reinstating Plaintiff's state law claims against the Suffolk County Defendants." (ECF No. 95).

13

49. On September 1, 2022, this Court entered an Order denying Plaintiff's former counsel's letter request to "reinstate" the dismissed state-law claims. In this Order, which is reflected on the docket on September 1, 2022, the Court explicitly found that Plaintiff's former counsel had "failed to comply with New York General Municipal Law § 50-e, which requires that a notice of a claim against a public corporation to be served personally or by registered or certified mail within ninety days in order for the public corporation or its employees to be held liable in a personal injury suit."

50. In this Court's September 1, 2022 Order, the Court noted that, even after being notified by defendant, Suffolk County, that the Notice of Claim was not properly served, Plaintiff's former counsel still did not remedy this defect within ten days, as allowed by New York General Municipal Law § 50-e(d). *Id.*

51. Accordingly, this Court ruled on September 1, 2022, that Plaintiff's former counsel's "request to reinstate [Plaintiff's] state law claims against the Suffolk County Defendants is DENIED."

52. Plaintiff's former counsel's repeated failures to properly litigate Plaintiff's state-law claims against the Suffolk Count Defendants had a severely prejudicial effect on Plaintiff: all of Plaintiff's state-law claims against the most culpable defendants in this case (Suffolk County CYS) were completely dismissed with prejudice.

53. In addition, as Plaintiff has previously articulated to this Court, during a prior mediation in this case, Plaintiff's former counsel chastised Plaintiff and pressured Plaintiff to settle for an amount that was far less than: (a) the true value of Plaintiff's case; and (b) the value of the settlement ultimately obtained by undersigned counsel. (ECF 126).

54.    The following is an itemization of disbursements advanced by Plaintiff's prior counsel, Jon Norinsberg, Esq., which Plaintiff requests be disallowed:

| Item | Amount |
|---|---|
| 1.  FDNY Filing Fee – Court Filing Fees | $400.00 |
| 2.  Fedex – Shipping Fees | $237.20 |
| 3.  Greybridge PR LLC – Public Relations | $2,500.00 |
| 4.  Joseph Ledwidge PC – Estate Counsel Fees | $3,000.00 |
| 5.  LetterStream – Direct Mail Services | $127.30 |
| 6.  National Records Retrieval – Medical Records Retrieval Fees | $3,323.90 |
| 7.  PM Legal – ADR Services | $2,308.00 |
| 8.  Scheinman – ADR Services | $2,764.95 |
| 9.  UPS – Shipping Fees | $78.81 |
| 10.  USPS – Shipping Fees | $10.37 |
| 11.  Expert Pays, LLC – Lien for Expert Witness Fees | $62,198.33 |
| Total: | $76,948.86 |

55.    For all the above reasons, Plaintiff and Movant request this Court allow and set attorney's fees at $3,000,000.00, to be paid to Bosworth Law, LLC, representing 33 1/3% of the gross settlement amount.[8]

## DISTRIBUTION OF THE INFANT PLAINTIFFS SETTLMENT PROCEEDS

56.    Movant further requests this Court approve the settlement funds of the Infant Plaintiffs, Anthony Valva and Andrew Valva, to be payable to Justyna Zubko-Valva, as Mother

---

[8] Regardless of how this Court rules regarding allocation of the $3,000,000.00 in attorney's fees, this Court should immediately disburse to Plaintiff the $6,000,000 in net settlement funds due to Plaintiff so as to not delay Plaintiff's receipt of settlement funds due to any fee dispute, especially since Plaintiffs and her children are facing financial hardship and their home faces the final step of foreclosure. The immediate disbursement of the $6,000,000 to Plaintiff does not and could not have any effect on the allocation of the $3,000,000 in attorney's fees since $3,000,000 is the most the attorney's fee could ever be under Plaintiff's contingency-fee agreement.

and Natural Guardian of Infant Plaintiffs in order to be placed immediately in Infant Plaintiffs' custodial insured bank accounts set up by Plaintiff for the sole use and benefit of the Infant Plaintiffs, where no withdrawals shall be made from said accounts before Infant Plaintiffs reach the age of eighteen (18) years.

## PLAINTIFF IS THE SOLE DISTRIBUTEE OF THE ESTATE OF THOMAS VALVA

57.    Michael Valva, Tommy Valva's father, was charged and convicted with the murder in the second degree of his son Thomas, Decedent herein.

58.    Decedent's biological father, Michael Valva, should be disqualified pursuant to New York States Slayer's Rule, a well-settled rule that a person who kills may not profit from the death of his/her victim. *Riggs v. Palmer*, 115 N.Y. 506 (1889); *Matter of Demesyeux*, 42 Misc.3d 730 (Surr. Ct., Nassau Cnty 2013).

59.    Plaintiff is the Mother and Natural Guardian of the Infant Plaintiffs, Anthony Valva and Andrew Valva. Anthony Valva is seventeen (17) years old, having been born on July 1, 2009, and Andrew Valva is thirteen (13) years old having been born on May 16, 2013. Infant Plaintiffs reside with Plaintiff at 350 N. Corona Avenue, Apt. 25, Valley Stream, New York 11580.

60.    All of the above persons are of full age and under no disability, except as follows:

A.    Michael Valva is incarcerated at Clinton Correctional Facility. The superintendent of Elmira Correctional Facility is Mariejosee King.

B.    Infant Plaintiffs, Anthony Valva and Andrew Valva are not the distributees of the Estate of Thomas Valva. Rather, they are siblings of Decedent and Infant Plaintiffs in the underlying action who were also subjected to abuse by the Defendants, Michael Valva and Angela Pollina, and as a result sustained personal injuries. Infant Plaintiff Anthony Valva has autism (diagnosed since childhood).

16

61.     Decedent's distributees are citizens of the United States. Decedent left surviving no spouse and no children, biological or adopted, marital or non-marital.

62.     No person is interested in this proceeding as a surety on an administrator's bond, no such bond having been required.

63.     No other person is interested in this proceeding. Without limiting the foregoing, Plaintiff states, based on Plaintiff's review of Decedent's papers and personal effects after Decedent's death:

A.      Decedent's funeral bill, the amount of which is set forth below in this affidavit in connection with showing compliance with 22 NYCRR §207.38(b)(5) and (6), was paid in full by Mangano Funeral Home, Inc., who waives reimbursement therefor.

B.      Decedent did not rent or lease any real property.

C.      Decedent was not engaged in any business.

D.      Decedent was not indebted to any health provider, nor is any lien claimed against Decedent, Decedent's Estate or the proceeds of the claims described below by any health provider, for hospital or medical services, unless otherwise set forth elsewhere in this Petition.

E.      On January 12, 2026, a search of the Suffolk County Surrogate Court's records was made for powers of attorney, assignments and encumbrances made and executed by any person interested in and entitled to a share of the Estate other than the above distributees revealed none.  Plaintiff knows of no such powers of attorney, assignments or encumbrances not filed and recorded.

F.      Decedent was not a party to any bond, note, judgment or other instrument creating any liability, contingent or otherwise.

G.      Decedent left no liability for unpaid income taxes.

H.      Taking into account the allocation of the proceeds of the Estate's tort claims as proposed herein, Decedent's estate is exempt from Federal and State estate taxes.

I.      Unless otherwise set forth elsewhere in this motion, Decedent had no debts, and Plaintiff has received no claims, whether contingent, possible or otherwise, against Decedent or Decedent's Estate.

64.     In obtaining the extremely advantageous settlement, counsel avoided not only the risk of a trial, but the enormous out-of-pocket expense that a trial would have entailed, amounting to thousands, if not tens of thousands, of dollars, such as the fees of medical and actuarial experts on the damage issues and experts on the liability issues, daily transcripts, copying expenses and, assuming a verdict comparable to the settlement, the out-of-pocket expenses associated with the inevitable appeal.  Even if a favorable verdict were to have withstood appeal, all of those expenses would have reduced the Infant Plaintiffs' and the Estate's share of the recovery.

65.     The settlement is reasonable, in view of the following:

A trial of the Claims would expose the Estate to the substantial out-of-pocket expenses that such trials invariably entail, including the fees of experts on the damage issues and on the liability issues, daily transcripts and copying expenses, the jury demand fee and other miscellaneous expenses, all of which would tend to diminish the Estate's share of the recovery and, if a verdict is returned for Defendants, would cause the Estate a substantial expense with nothing to show for it.

66.    Based on Plaintiff's investigation and for the foregoing reasons, the settlement is reasonable and should be accepted and approved by this Court.

67.    In compliance with 22 NYCRR § 207.38(b)(5) and (6), the following sets forth all information available to Plaintiff relating to obligations incurred for funeral expenses and those obligations incurred for hospital, medical and nursing services as to which any information has come to Plaintiff, documentation of which is attached hereto:

| Name and Address | Total | Paid | Balance Due |
|---|---|---|---|
| Mangano Funeral Home, Inc.<br>1701 Deer Park Avenue<br>Deer Park, New York 11729<br>(waiving reimbursement) | $16,970.00 | $0.00 | $0.00 |
| Total: | $16,970.00 | $0.00 | $0.00 |

68.    No hospital notice of lien has been filed under Lien Law §189.  None of the proceeds of the Claims has been assigned.

69.    No claim for worker's compensation benefits has been made relating to the Claims and no lien for worker's compensation benefits is asserted by any payor thereof.

70.    There are no outstanding medical bills related to the claims of Infant Plaintiffs.

71.    Decedent and the Infant Plaintiffs were not a recipient of Medicaid nor Medicare and therefore no claim has been asserted against the Infant Plaintiffs or the Estate.

72.    Plaintiff requests that the net proceeds, after deducting the legal fees, in the amount of $6,000,000.00, be apportioned as follows:

a.    A total sum of $5,214,004.29, which is $7,820,615.40 minus a 33.33% contingency fee, shall be paid via check directly to Justyna Zubko-Valva for payment and settlement of all of Justyna Zubko-Valva's individual, direct claims brought on her

19

own behalf against Settling Defendants. The total sum of $215,806.12, which is $323,693.00 minus 33.33% contingency fee shall be paid via check for all claims for wrongful death provided to Justyna Zubko-Valva as sole distributee. The total sum of $215,806.12, which is $323,693.00 minus 33.33% contingency fee shall be paid via check for all claims for conscious pain and suffering of Thomas Valva and provided to the Estate of Thomas Valva with Justyna Zubko-Valva as Administratrix of the Estate of Thomas Valva in accordance with the timing and manner of payment set forth in the Proposed Order.

b. A total sum of $177,342.20 (which is $266,000 for Infant Plaintiff Anthony Valva's claims minus a 33.33% contingency fee) allocated to Infant Plaintiff Anthony Valva shall be paid via check and placed in Anthony Valva's custodial insured bank account identified in the Proposed Order paying the highest rate of interest available, with Justyna Zubko-Valva as mother, natural guardian and custodian, for the sole use and benefit of the Infant Plaintiff Anthony Valva, where no withdrawals shall be made from said account before the Infant Plaintiff Anthony Valva reaches the age of eighteen (18).

c. A total sum of $177,342.20 (which is $266,000 for Infant Plaintiff Andrew Valva's claims minus a 33.33% contingency fee) allocated to Infant Plaintiff Andrew Valva shall be paid via check and placed in Andrew Valva's custodial insured bank account identified in the Proposed Order paying the highest rate of interest available, with Justyna Zubko-Valva as mother, natural guardian and custodian, for the sole use and benefit of the Infant Plaintiff Andrew Valva, where no withdrawals

20

shall be made from said account before the Infant Plaintiff Andrew Valva reaches the age of eighteen (18).

    **WHEREFORE**, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's Motion for Settlement.

Respectfully submitted,

**BOSWORTH LAW, LLC**

Date: 7/11/26

*/s/ Thomas E. Bosworth*_____
THOMAS E. BOSWORTH, ESQ.
*Counsel for Plaintiff*

21

## CERTIFICATE OF SERVICE

I, Thomas E. Bosworth, Esq., counsel for the plaintiff, hereby certify that Plaintiff's Motion for Order Approving Settlement of Plaintiff Justyna Zubko-Valva's Own Individual Direct Claims Brought on Her Own Behalf Against Settling Defendants, Estate of Thomas Valva and Infant Plaintiffs, Anthony Valva and Andrew Valva was served upon all parties through their counsel of record through the Court's e-notification system.

Date: 7/11/26

/s/ Thomas E. Bosworth
THOMAS E. BOSWORTH, ESQ.
*Counsel for Plaintiff*