UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTYNA ZUBKO-VALVA, as Mother and Natural Guardian of ANTHONY VALVA and ANDREW VALVA, and as Administratrix of the Estate of THOMAS VALVA, and JUSTYNA ZUBKO-VALVA, individually,<br><br>Plaintiff,<br><br>- against -<br><br>THE COUNTY OF SUFFOLK *et al.*,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>20-cv-2663 (BMC) |

**COGAN**, District Judge.

This case, which plaintiff brought after the death of her eight-year-old son, has now settled. Before the Court are two dueling motions for attorney's fees. Plaintiff, through her current counsel (Bosworth), has filed a motion to cancel or disallow a charging lien asserted by her former counsel (Norinsberg). Norinsberg has filed a cross-motion to fix and enforce the charging lien. Because the Court finds that Norinsberg's retainer agreement did not waive his right to assert a charging lien, the Court grants Norinsberg's motion and denies plaintiff's motion. Because both Norinsberg and Bosworth have rendered valuable legal services to plaintiff, the Court awards each of them attorney's fees based on *quantum meruit*.

## BACKGROUND

The Court assumes familiarity with the facts of this case, but to summarize, in January 2020, eight-year-old Thomas Valva froze to death in his father's garage. Thomas's father Michael Valva and his father's girlfriend Angela Pollina had locked him in the garage overnight as a form of punishment. Indeed, Mr. Valva and Ms. Pollina subjected Thomas, along with his

brothers Anthony and Andrew, to a slew of similar "punishments" in the years leading up to Thomas's death.

Plaintiff brought this lawsuit against several institutional actors who interacted with her and her family in the time period leading up to her son's death. These institutional actors, including multiple employees of Child Protective Services ("CPS"), awarded primary custody of the children to Mr. Valva, rather than plaintiff, based on Mr. Valva's (later disproven) allegations that plaintiff was abusing the children. Plaintiff then provided overwhelming evidence that Mr. Valva was abusing the children while they were in his custody, but the children were not removed from his custody.

Plaintiff sought damages on behalf of herself individually, as the mother and natural guardian of Anthony and Andrew, and as the administratrix of the estate of Thomas. After six years of litigation, the matter settled for $9,000,000.00. The Court approved the settlement in July 2026.

Shortly thereafter, plaintiff's current and former counsel turned their attention to the question of which attorney (or attorneys) would get the fees for the work performed over the last six years. The two interested attorneys here are Jon Norinsberg and Thomas Bosworth. Norinsberg was plaintiff's original attorney. He investigated, filed, and then litigated the case for three and a half years. In 2023, there was an irreparable breakdown in the attorney-client relationship between Norinsberg and plaintiff. In November 2023, the Court allowed Norinsberg to withdraw as plaintiff's attorney and assert a charging lien.

The retainer agreement that governs Norinsberg and plaintiff's relationship states in relevant part:

> JON L. NORINSBERG, ESQ., PLLC takes this matter subject to investigation. He reserves the right to terminate this attorney-client relationship for any reason, at any time.

> If JON L. NORINSBERG, ESQ., PLLC terminates this relationship, there is no fee due from the client.

In April 2024, Bosworth appeared in the action as plaintiff's new attorney. He litigated the case through additional discovery and settlement, including settlement approval, over about two years.

## LEGAL STANDARD

New York Judiciary Law § 475 allows an attorney to assert a lien upon his client's cause of action, which attaches to a verdict or settlement in the client's favor "and the proceeds thereof in whatever hands they may come." "[T]he Second Circuit has long recognized that the lien created by section 475 … is enforceable in federal courts in accordance with its interpretation in New York courts." See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 449 (2d Cir. 1998) (citations omitted). "As for the amount at which the charging lien should be fixed, it is also well settled in New York that absent an express agreement between the attorney and client to the contrary, a discharged attorney may recover the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit*." Stair v. Calhoun, 722 F. Supp. 2d 258, 268 (E.D.N.Y. 2010).

## DISCUSSION

### I. Norinsberg's Entitlement to Fees

As a preliminary matter, Norinsberg argues that plaintiff lacks standing to challenge the lien. That is incorrect. "[I]t has long been established that … the attorney fee award belongs to the client, not the attorney." Vitalone v. City of New York, 395 F. Supp. 3d 316, 326 (S.D.N.Y. 2019). The proceeds of which Norinsberg seeks a share belong to the plaintiff, and if he succeeds in enforcing his charging lien, he will be entitled to a considerable portion of plaintiff's settlement fund. The fact that this portion of the settlement fund will otherwise later be paid to

Bosworth is irrelevant to the standing analysis.[1] "[M]onetary harms readily qualify as concrete injuries under Article III," TransUnion LLC v. Ramirez, 595 U.S. 413, 414 (2021), and plaintiff therefore has standing to challenge Norinsberg's charging lien against her settlement fund.

Turning to the retainer agreement between Norinsberg and plaintiff, the agreement states that if Norinsberg withdraws, "there is no fee due from the client." He withdrew. If Norinsberg had sued plaintiff for his attorney's fees upon withdrawal, he likely would have been unsuccessful based on the plain language of the retainer agreement.

But that is not what Norinsberg has done. Norinsberg has asserted a charging lien on the settlement fund. A charging lien is a creature of equity. See Itar-Tass Russian News Agency, 140 F.3d at 448. Whether a charging lien can be enforced depends on whether the attorney seeking the lien is an attorney of record in the relevant case, not whether there is a retainer agreement in place. See id. at 450 (collecting cases). Although "the case law contemplates circumstances in which an attorney can waive or forfeit his or her right to a charging lien, that consequence only follows after 'an attorney … without just cause neglects or refuses to proceed with the prosecution of the case.'" Hampshire Grp. Ltd. v. Scott James Co., L.L.C., No. 14-cv-2637, 2015 WL 5306232, at *6 (S.D.N.Y. July 27, 2015) (quoting Koury v. United Tribes of African News, Inc., No. 02-cv-0023, 2003 WL 21279441, at *2 (S.D.N.Y. June 4, 2003)).

"Poor client relations, differences of opinion, or personality conflicts do not amount to cause, which is shown by impropriety or misconduct on the part of the attorney." Garcia v. Teitler, 443 F.3d 202, 212 (2d Cir. 2006). In its order allowing Norinsberg to withdraw, the Court found that "there [were] irreconcilable differences between the attorney and the client,"

---

[1] Norinsberg argues alternatively that Bosworth is the real party in interest, and he too lacks standing. Currently, the dispute is between the plaintiff and Norinsberg, although Bosworth obviously has a strong interest in how the dispute is resolved. The Court thus declines to analyze the issue of Bosworth's standing.

including "sharp disagreements over case strategy, the scope of discovery, and the best way to move forward in this case." Nothing in the record suggests impropriety or misconduct by Norinsberg. Norinsberg's "permitted withdrawal as attorney of record does not affect [his] entitlement to the statutory lien under Section 475." Itar-Tass Russian News Agency, 140 F.3d at 451.

A retainer agreement could of course alter the statutory regime set forth in Section 475, in which case the matter would be a question of contract law. Plaintiff asserts that is precisely the situation here. But if a contract is silent, then default statutory rights (like Section 475) apply. Thus, the question is whether Norinsberg's contract that says "no fee shall be due from client" if Norinsberg withdraws can be interpreted fairly to overrule Norinsberg's statutory right to assert a charging lien. "[A] clear and unambiguous retainer agreement will be enforced according to its terms," Judd Bernstein, P.C. v. Long, 180 F. Supp. 3d 308, 312 (S.D.N.Y. 2016), but the Court is not persuaded that the language of the contract "clearly and unambiguously" covers this scenario.

"Contracts should be viewed in the light in which they were made." Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 69 (2d Cir. 2005). The retainer agreement's purpose was to govern Norinsberg's representation of plaintiff in this case and payment therefor. Because Norinsberg took the case on a contingency-fee basis, it is logical that the contract provides that his withdrawal would not trigger a fee due from the client. But it would be completely illogical for the agreement to allow a windfall to plaintiff or a subsequent attorney because Norinsberg properly withdrew as plaintiff's attorney based on irreconcilable differences. Although ambiguous contract provisions "are generally to be construed against the drafter" (*i.e.*, Norinsberg), First Am. Int'l Bank v. Cmty.'s Bank, No. 10-cv-3775, 2012 WL 4341740, at *7

(S.D.N.Y. Sept. 21, 2012) (quoting McCarthy v. Am. Int'l Grp., Inc., 283 F.3d 121, 124 (2d Cir. 2002)), "[i]t is hornbook law that a contract should be interpreted so as not to render its terms nonsensical," InterDigital Commc'ns Corp. v. Nokia Corp., 407 F. Supp. 2d 522, 530 (S.D.N.Y. 2005). The Court thus finds that the retainer agreement is not ambiguous as to this issue, and the agreement did not waive Norinsberg's right to assert a charging lien for the reasonable value of services rendered.

Nor does Norinsberg's conduct – including his withdrawal as plaintiff's attorney – indicate any waiver or forfeiture of his right to a charging lien. See Avaras v. Clarkstown Central Sch. Dist., No. 15-cv-9679, 2021 WL 5745718, at *5 (S.D.N.Y. Dec. 2, 2021) ("[T]he right to enforce … a [Section 475] lien will be waived by any action inconsistent with an intent to enforce the lien." (quoting Pet. of Harley & Browne, 957 F. Supp. 44, 49 (S.D.N.Y. 1997)). The Court found that Norinsberg had good cause to withdraw as plaintiff's attorney.[2] In fact, Norinsberg's conduct has been fully consistent with his intent to enforce the lien. Most significantly, he asserted the charging lien at the time of his withdrawal.

Because the Court has found that the retainer agreement between plaintiff and Norinsberg does not bar Norinsberg's assertion of a charging lien, the default rules apply, and Norinsberg is entitled to a *quantum meruit* portion of the fees.

## II. Apportionment of Fees and Costs

Having determined that Norinsberg is entitled to some portion of the attorney's fees, the Court must determine how to apportion the fees between Norinsberg and Bosworth. "[T]he proper method of fixing the sum of the lien is through a *quantum meruit* analysis, which requires

[2] Bosworth should have some sympathy for this position. At one point, he also notified the Court of his intent to withdraw due to "an irreparable breakdown in the attorney-client relationship." Dkt. No. 152. Instead of allowing Bosworth to withdraw, Magistrate Judge Lindsay referred the parties to mediation, in which the matter finally settled.

'ascertaining the reasonable value of the services rendered[.]'" Agence France Presse v. Morel, No. 10-cv-2730, 2015 WL 13021413, at *8 (S.D.N.Y. Mar. 23, 2015) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 148 (2d Cir. 1998)), aff'd, 645 F. App'x 86 (2d. Cir. 2016). "A charging lien is equitable in nature, and the 'overriding criterion for determining the amount of a charging lien is that it be fair.'" Pettiford v. City of Yonkers, No. 14-cv-6271, 2020 WL 1331918, at *3 (S.D.N.Y. Mar. 20, 2020) (quoting Sutton v. N.Y.C. Transit Auth., 462 F.3d 157, 161 (2d Cir. 2006)), aff'd, 833 F. App'x 893 (2d Cir. 2020).

**A. Allegations of Misconduct**

Plaintiff argues that Norinsberg is entitled to no *quantum meruit* fee due to "impropriety and misconduct in handling this case." Nothing in the record indicates that Norinsberg's conduct resembled the types of impropriety that have persuaded courts to deny a *quantum meruit* fee to an otherwise deserving attorney. See, e.g., Garcia, 443 F.3d at 212 (affirming district court's decision that attorney was discharged for cause because his joint representation of multiple criminal defendants was riddled with conflicts and misconduct); Holcombe v. Matsiborchuk, 747 F. App'x 875, 878 (2d Cir. 2018) (affirming district court's decision to extinguish attorney's lien because he "was hostile," "used insults such as 'stupid' or 'inept,'" and told his client to "transfer her power of attorney because she was incapable of 'functioning' in the case"); In re Emanuel, 422 B.R. 443, 453 (Bankr. S.D.N.Y. 2009) (denying claim for *quantum meruit* attorney's fees because attorney "irrationally disregarded numerous state court orders directing him to turn over his case files … resulting in prejudice to [his client]"), aff'd, 450 B.R. 1 (S.D.N.Y. 2011).

Although Norinsberg's failure to file timely claim notices against Suffolk County and related defendants resulted in dismissal of certain state-law claims, he asserts that those claims

were duplicative of federal-law claims.[3] Deputy County Attorney Susan Flynn, who supervised Suffolk County's defense, submitted a declaration in support of Norinsberg's argument. Ms. Flynn's declaration states that dismissal of the state-law claims "did not materially affect the County's valuation of the case since multiple federal claims under 42 U.S.C. § 1983 remained pending." Ms. Flynn is presumably an unbiased party in the fee dispute, so her declaration on this point is persuasive.[4]

Plaintiff argues that the dismissal of the state-law claims was detrimental because she sought $100,000 in punitive damages based on the state-law claims. Plaintiff insists that those damages were forfeited when the claims were dismissed because "punitive damages are unavailable against a municipality under Section 1983." Gilead Cmty. Servs., Inc. v. Town of Cromwell, 112 F.4th 93, 103 (2d Cir. 2024) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 268 (1981)). This argument ignores the reality of this case. There were several individual defendants also associated with Suffolk County who could have been held liable for those damages under Section 1983 if the case had proceeded to trial, see Fact Concerts, 453 U.S. at 269, and in any event, claims in these types of cases are often overlapping. To assume that $100,000 in damages was forfeited is merely a guess, and even if it were true, this error would not constitute the type of misconduct that deprives an attorney of any fee whatsoever.

[3] Norinsberg further argues that his notices were actually timely because since the Court's order dismissing the state-law claims, New York courts have "uniformly held" that the 90-day notice-of-claim deadline had been tolled during this period by Governor Cuomo's Executive Order. See Finley v. Diocese of Brooklyn, 252 N.Y.S.3d 702, 705 (2nd Dep't 2026). The Court need not decide whether that tolling applied to litigation of state-law claims in federal courts because the Court is persuaded that the dismissal of the state-law claims did not meaningfully impact the settlement or possible recovery of plaintiff.

[4] Plaintiff insists that discovery is needed on this issue because "where there are disputed issues of fact surrounding a charging lien, discovery is warranted." But plaintiff has not offered any evidence to dispute Norinsberg's and Flynn's assessments that the value of the state-law claims against Suffolk County was *de minimis*. In other words, there is no disputed issue of fact. The only evidence suggests that the state-law claims were not uniquely valuable, and the Court therefore declines to grant discovery or an evidentiary hearing on this issue.

**B. *Quantum Meruit***

Having determined that any alleged impropriety is a non-factor, the Court must "ascertain[] the reasonable value of the legal services rendered" by both Norinsberg and Bosworth. Sequa Corp., 156 F.3d at 148. "Although a court is not bound by the parties' retainer agreement, it may still use such agreement as guidance in determining the reasonable value of the services provided." Stair, 722 F. Supp. 2d at 268-69. Further, the Court may consider "the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known)." Sequa Corp., 156 F.3d at 148.

Here, both Norinsberg and Bosworth contracted with plaintiff for one-third of the total amount recovered on a contingency-fee basis. Thus, the Court finds that the reasonable value of the services provided to plaintiff was one-third of the total recovery, and the amount to split between the two attorneys is $3,000,000.00. The Court also finds that both attorneys were well qualified to represent plaintiff, and the difficulty of the matter and the amount at issue apply to both attorneys with equal force. The Court therefore does not consider these factors in the apportionment of fees.

Turning to the remaining factors, both attorneys contributed to the resolution of this case. Norinsberg conducted all of the pre-filing investigation, which was complex and fact-intensive given the many institutional actors involved in the tragedy. He also engaged in extensive discovery, including written discovery, third-party subpoenas, document review, and preparing for depositions. He opposed six separate motions to dismiss, hired and worked with four experts, and prepared for mediation. He also developed the legal theories of plaintiff's case. For

example, he developed a novel denial-of-fair-trial claim arising from CPS's alleged fabrication of evidence during the civil neglect proceeding against plaintiff. He also developed a Monell claim against Suffolk County for failure to adequately train CPS employees on abuse reports involving autistic children and litigated several governmental immunity defenses. Norinsberg represents that he committed more than 2,000 hours to plaintiff's case. The Court finds it is fair for to say that his "efforts laid the groundwork for the $9 million settlement."

Bosworth, on the other hand, attended several Court-ordered conferences, successfully mediated the case, and secured approval of the infant compromise. The mediation was not straightforward; there were three mediation sessions and many individual meetings with the mediator. Although Norinsberg's attorney-client relationship with plaintiff broke down during the first mediation attempt, Bosworth was able to resolve the matter during the second round of mediation. He also continued Norinsberg's discovery efforts by conducting interviews, reviewing documents, and engaging expert witnesses, among other things. Bosworth does not quantify the number of hours he worked on the case, but because he took this case on a contingency-fee basis, the Court understands that he may not have tracked his hours in detail. See Almanzar v. Silver Star Props. Corp., 699 F. Supp. 3d 253, 256 (S.D.N.Y. 2023) ("The very purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of hours actually expended by the attorney.").

But without the ability to assess the time reasonably expended on Bosworth's services, the Court must weigh most heavily the nature and extent of the services, the quality of performance, and the results obtained by each attorney. On the first two factors, the Court is persuaded that Norinsberg's efforts were more extensive and effective than Bosworth's. Norinsberg did the lion's share of the work to prepare this case for settlement, and one of his

adversaries, Ms. Flynn, attests that she is "not aware of substantial evidentiary development occurring after successor counsel entered the case." Bosworth, on the other hand, may have done substantial work to get up to speed on the case, but that does not mean he advanced the case beyond the context of mediation. And the main interaction he had with the Court – filing the motion for approval of the infant compromise – was not of the highest quality. It took three attempts for the Court to approve the petition. In terms of results, however, Bosworth did what Norinsberg could not: he successfully settled the case.

The Court therefore finds that the reasonable value of the legal services rendered by Norinsberg is approximately two-thirds of the contingency fee ($2,000,000.00), and the reasonable value of the legal services rendered by Bosworth is approximately one-third of the contingency fee ($1,000,000.00).

**C. Costs**

Norinsberg's retainer agreement provides that plaintiff shall reimburse his costs from the settlement fund. However, Bosworth has stipulated that he will pay any costs awarded to Norinsberg from his portion of the fee. The Court therefore finds that Norinsberg's costs ($76,948.86) shall be deducted from Bosworth's portion of the fee.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to cancel or disallow the lien [211] is denied, and Norinsberg's cross-motion to fix and enforce the lien [212] is granted.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
October 14, 2026